IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 5:19-CR-22 MOC |
| | ) | |
| vs. | ) | OPPOSITION TO DEFENDANT |
| | ) | GREG E. LINDBERG'S MOTION |
| 1) GREG E. LINDBERG, | ) | TO DISMISS THE INDICTMENT |
| 2) JOHN D. GRAY, | ) | |
| 3) JOHN V. PALERMO, JR., and | ) | |
| 4) ROBERT CANNON HAYES. | ) | |
| | ) | |
| | ) | |

## INTRODUCTION

Decisions to hire, fire, assign, and reassign government employees are core official acts under *McDonnell v. United States*, 136 S. Ct. 2355 (2016). The Bill of Indictment charges the defendant, a wealthy insurance executive, with offering a $2 million bribe to the top ranking insurance official in North Carolina to remove a subordinate regulator the defendant did not like, and replace her with one of the defendant's co-conspirators or another individual of his choosing. The defendant's argument that he could do this as long as he did not explicitly request an "ultimate outcome" rests upon a misreading of *McDonnell*, which nowhere applies an "ultimate outcome" test. Instead, as *McDonnell* and the courts that have subsequently interpreted that decision have made clear, the removal of the disfavored regulator—and her replacement by a regulator of the defendant's choosing—were themselves "official acts." This Court should reject the defendant's novel and erroneous interpretation of *McDonnell*.

Similarly, the defendant's argument that *Skilling v. United States*, 561 U.S. 358 (2010), imposed a new requirement that the government must prove a personal financial benefit to a

1

bribe payor is unsupported by any authority, including the *Skilling* decision itself. A bribe is a bribe, regardless of the payor's motive or realization of profit.

Finally, the defendant's constitutional concerns—regarding the First Amendment's alleged protection of the exchange of campaign contributions for specific action—are unfounded, and have already been addressed by the Supreme Court. When a campaign contribution is conditioned on specific official action it constitutes a bribe and is not protected by the First Amendment. *McCormick v. United States*, 500 U.S. 257, 272 (1991).

## **FACTUAL & PROCEDURAL BACKGROUND**

A grand jury in the Western District of North Carolina returned a Bill of Indictment against four defendants—Greg E. Lindberg, John D. Gray, John V. Palermo, and Robert Cannon Hayes—charging one count of conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349, and one count of bribery concerning programs receiving federal funds and aiding and abetting, in violation of 18 U.S.C. §§ 666(a)(2) and 2, in connection with a scheme to bribe the elected North Carolina Insurance Commissioner to remove and replace a regulator in the Department of Insurance who was responsible for regulating Lindberg's insurance companies. (Docket 3).[1] Relevant to this Motion, the Bill of Indictment properly alleges that the defendants "corruptly gave, offered, and promised things of value to the [Commissioner] . . . in exchange for specific official action . . . , including the removal of the Senior Deputy Commissioner . . . responsible for overseeing the regulation . . . of [the defendant's insurance companies]." Bill of Indictment ¶ 13.

---

[1] The Bill of Indictment includes three additional charges of making false statements, in violation of 18 U.S.C. § 1001, against defendant Robert Cannon Hayes, which are not relevant to this Motion.

2

Although not required, the Bill of Indictment then provides extensive details about how the scheme unfolded, including a March 5, 2018, meeting, during which Lindberg requested the removal of the senior deputy commissioner and her replacement with Palermo, one of Lindberg's own senior employees and co-conspirators. *Id.* ¶¶ 35-37. During a private portion of that meeting, the Commissioner asked Lindberg simply, "What's in it for me?" *Id.* ¶ 38. Lindberg responded, without hesitation, with an offer of one to two million dollars for the Commissioner's 2020 re-election campaign. *Id.*[2]

The Bill of Indictment then details a series of meetings in which the defendants pressed the Commissioner for progress on the removal of the senior deputy commissioner and assured the Commissioner that they were upholding their end of the bargain by setting up independent expenditure committees and initiating the transfer of campaign contributions through the state political party. During a May 29, 2018, meeting, while pressuring the Commissioner to make the personnel change, Lindberg and Gray succinctly summarized the scheme, as Gray stated, "If we want to put it in these terms, if you're willing to have [a specified employee from another division] handle everything from Global Bankers Insurance Group, then we'll . . . ," and Lindberg interjected, "We'll put the money in the bank." *Id.* ¶ 57.

The series of meetings culminated in a final meeting on July 25, 2018. *Id.* ¶¶ 68-75. During that meeting, Lindberg again set forth the agreement and action items to be accomplished by Gray and the Commissioner: "Ok, so resolved. You'll [Gray] get on the horn with Robin

---

[2] Accusing the Insurance Commissioner of political animus, the defendant quotes from an article about the Commissioner's decision to return prior political contributions from the defendant. Motion at 5 n.4 (citing David Larson, *Chairs of Major Political Parties at Center of Insurance Scandal*, North State Journal (Apr. 10, 2019)). In addition to the quote provided by the defendant, the article states the Commissioner returned the contribution "out of an abundance of caution," as "[h]e believed receiving money from a company he was tasked with regulating wouldn't look appropriate and he 'didn't want any questions to be raised.'"

3

[Hayes] right away. Get that check over to [the Commissioner] now. And then by the end of August we'll get [the Commissioner] the balance, and we'll get [the selected employee from another division of the Insurance Department]." *Id.* ¶ 72. The very next day, at the instruction of Lindberg and Gray, Hayes caused the transfer of a $230,000 installment of the bribe payment—funneling funds donated by Lindberg—from the state party to the Commissioner's campaign account. *Id.* ¶ 74.

## ARGUMENT

I. **Whether the Defendant's Requested Action Constitutes an "Official Act" Is a Question of Fact for a Properly Instructed Jury.**

The allegations in the Bill of Indictment—that the defendant offered and paid a bribe for a personnel action—if true, would constitute the offenses of bribery and honest services fraud as charged. Federal Rule of Criminal Procedure 7 requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged" that lists the statute violated for each count. Fed. R. Crim. P. 7; *see also Hamling v. United States*, 418 U.S. 87, 117 (1974) (an indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense"). Courts may not review an indictment to judge the facts alleged therein. *United States v. Wills*, 346 F.3d 476, 488 (4th Cir. 2003); *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) ("[A] court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." (internal citation omitted)).

The defendant asks this court to find that no properly instructed jury could conclude that the allegations in the Bill of Indictment amount to an "official act." In doing so, the defendant ignores the *McDonnell* Court's admonition that the question of whether alleged conduct

4

constitutes an "official act" is a factual question for the jury to determine: "It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' at the time of the alleged *quid pro quo*." 136 S. Ct. at 2371; *United States v. Miserendino*, 283 F. Supp. 3d 489, 492-93 (E.D. Va. 2017) (denying motion to dismiss and leaving for jury whether defendant committed "official act"). Whether something qualifies as an "official act" is an issue for a properly instructed jury, so long as it is not something the Supreme Court held categorically insufficient to constitute official action, such as setting up a meeting or making a phone call. *Id.* The official act alleged here—the removal of a high-ranking government employee from an influential regulatory position and her replacement with another regulator hand-picked by the defendant—stands apart from the *de minimis* conduct cited in *McDonnell*. The defendant's attempt to litigate this factual question pre-trial is an effort to circumvent a jury, and his Motion should be denied.

**II.    Removal and Replacement of the Senior Deputy Commissioner Assigned to Regulate the Defendant's Companies Is an "Official Act."**

The removal and replacement of the senior deputy commissioner charged with regulating the defendant's companies fits squarely within the definition of "official act" set forth in *McDonnell*.

At trial in *McDonnell*, the parties agreed that bribery would be defined for the jury according to the general federal bribery statute, which in relevant part required proof that the public official had "committed or agreed to commit an 'official act' in exchange for" loans and

5

gifts. 136 S. Ct. at 2365.³ At issue on appeal was whether "arranging a meeting, contacting another public official, or hosting an event—without more—concerning any subject," qualified as an "official act" as defined in Section 201. *Id.* at 2367-68. In holding that these actions did not, the Supreme Court identified two requirements to prove an "official act:" (1) a "question, matter, cause, suit, proceeding or controversy" that "may at any time be pending" or "may by law be brought" before a public official; and (2) a decision or action on that question, matter, cause, suit, proceeding or controversy. *Id.* at 2368. Here, the decision to remove and replace the regulatory official in charge of regulating the defendant's companies meets both of these requirements.

### A. The Personnel Decision Was a "Matter" That Was "Pending" or "May by Law be Brought Before" the Insurance Commissioner, and Required a "Formal Exercise of Governmental Power."

As described above, under the first prong of the "official act" test, the government must identify a "question, matter, cause, suit, proceeding or controversy," that (a) is "pending" or that "may by law be brought before a public official;" and (b) involves "a formal exercise of governmental power" similar in nature to "a lawsuit, hearing, or administrative determination." *Id.* at 2368-69. The *McDonnell* Court interpreted a "pending" matter as "the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." 136 S. Ct. at 2369. A matter that "may by law be brought" is "something within the specific duties of an official's position." *Id.* The Court determined that "a typical meeting, call, or event arranged by

---

³ Contrary to the defendant's argument, *McDonnell* did not "make[] clear that honest-services fraud is defined by reference to Section 201, and therefore requires an official act." Motion at 9. Rather, the parties had agreed that bribery would be defined for the jury according to Section 201, which includes the term "official act." *McDonnell* then defined "official act." It did not hold that honest services fraud requires proof of an "official act."

6

a public official" does not qualify as a "question" or "matter" because it is "not of the same stripe as a lawsuit before a court, a determination before an agency, or a hearing before a committee." *Id.*

In the three years following *McDonnell*, the courts have found a spectrum of conduct— beyond "literal lawsuits, hearings, or administrative determinations" (Motion at 13-14)—to qualify under the first prong of the "official act" analysis, including:

- The appointment of a bribe payor to an ambassadorship. *United States v. Fattah*, 914 F.3d 112, 155-56 (3d Cir. 2019) (finding the appointment of a particular person to an ambassadorship to qualify as a "matter" pursuant to *McDonnell*, but remanding for jury to determine whether emails, letters, and phone calls were permissible "support" or impermissible "pressure" under the second *McDonnell* prong).

- The speaker of a state assembly's obtaining of a resolution and proclamation commending the bribe payor, which was a "routine, *pro forma* exercise[] rubber stamped by Assembly members." *United States v. Silver*, 864 F.3d 102, 108, 120-21 (2d Cir. 2017).

- An FBI Task Force Officer's use of law enforcement authority to obtain and disclose the text messages of the bribe payor's wife in exchange for "cases of beer and $100 cash." *United States v. Jones*, 207 F. Supp. 3d 576, 582 (E.D.N.C. 2016).

Indeed, the Third Circuit recently held that the decision to hire someone in exchange for a bribe was an "official act." *Fattah*, 914 F.3d at 156-57. In *Fattah*, a businessman paid a congressman $18,000 to hire his girlfriend as a staffer. 914 F.3d at 139. The Third Circuit held that the decision to hire was a "matter" that was "pending" before the congressman, and that it was focused, concrete and within the specific duties of the congressman's position. *Id.* at 156. As a result, the hiring met the criteria to qualify as an "official act." *See id.* at 156-57 ("Official acts need not be momentous decisions—or even notable ones. . . . In the realm of official acts, it is of no moment that [the girlfriend] provided only 'part-time, short term' labor. When a public official hires an employee to work in his government office, he has engaged in an official act.").

Likewise, here, the removal and replacement of a regulatory official is a "matter" that was "pending" before the Insurance Commissioner, that was focused, concrete, and within the specific duties of the Commissioner. It is a far cry from the simple meeting, telephone call, or event eschewed by *McDonnell*. It is, in the words of the *McDonnell* Court, "the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." 136 S. Ct. at 2369. Personnel decisions are often formally listed as action items, tracked for progress, and marked complete.[4]

### B. The Personnel Decision Was a Decision "On" the Matter at Issue.

Under the second prong of the "official act" test, "the Government must prove that the public official made a decision or took an action 'on' that question, matter, cause, suit, proceeding, or controversy, or agreed to do so." *Id*. at 2368. Without more, "[s]etting up a meeting, talking to another official, or organizing an event (or agreeing to do so)" are not official acts—although such actions "could serve as evidence of an agreement to take an official act." *Id.* at 2371-72.

The defendant's request was not for the Commissioner to set up a meeting or talk to another official about personnel matters at the Department of Insurance. His request was that the Commissioner remove and replace a specific and identified senior regulator assigned to regulate

---

[4] The defendant argues that he "sought less than what was asked for in *McDonnell*—that anyone *other* than a particular official be given authority to decide future matters"—whereas the constituent in *McDonnell* requested a meeting with the official capable of deciding his request. Motion at 16. The defendant misses the mark in two regards. First, as the Bill of Indictment clearly alleges, the defendant sought the replacement of the senior deputy commissioner—not with "anyone"—but with a person of his choosing. And, the personnel decision did not relate purely to undefined "future matters;" the defendant demanded the removal of the individual charged with regulating his companies at that moment, someone with whom his companies interacted regularly. Second, demanding the removal and replacement of an official with regulatory authority over one's companies is a clear contrast from merely seeking a meeting with a previously appointed official.

the defendant's companies. This is clearly an action on the identified matter. *See Fattah*, 914 F.3d at 156 (finding that the public official's decision to hire someone clearly satisfies the second requirement of *McDonnell*).

The defendant's claim that a personnel move does not amount to an "official act" because it would not necessarily "achieve favorable outcomes for Mr. Lindberg's company" (Motion at 1, 2, 16) is foreclosed by *McDonnell* itself. The *McDonnell* Court expressly held that a public official need not take action upon a final or ultimate government issue in order to perform an "official act;" rather, "a decision or action to initiate a research study—or a decision or action on a qualifying step, such as narrowing down the list of potential research topics—would qualify as an 'official act.'" 136 S. Ct. at 2370. Just as the *McDonnell* Court did not require that the Governor dictate a favorable result of the research study sought by the bribe payor to qualify as an "official act," the government here is not required to establish that the defendant obtained a favorable result of a specific regulatory matter. The demand for the removal of a specific regulatory employee—just like the demand for the initiation of a research study—is sufficient to constitute an "official act."

### III. *Skilling* Did Not Amend the Definition of Bribery and Does Not Require the Government to Demonstrate a Benefit to the Bribe Payor.

The defendant argues that in *Skilling*, the Supreme Court added the requirement "in the context of honest-services fraud predicated on public bribery, [that] the official act must benefit the payor." Motion at 17. The *Skilling* Court made no such holding, and the defendant cites no case to support his novel interpretation of *Skilling*.

In *Skilling*, the government sought to establish a third category of criminal conduct—in addition to bribery and kickbacks—covered by the honest-services fraud statute: "undisclosed self-dealing by a public official or private employee--*i.e.*, the taking of official action by the

9

employee that furthers his own undisclosed financial interests while purporting to act in the interests of those to whom he owes a fiduciary duty." 561 U.S. at 409. The Court rejected this third category of criminal conduct, holding that honest-services fraud criminalizes bribery and kickback schemes. *Id.* at 408-09. *Skilling* was not charged under the bribery theory of honest-services fraud and the Court's holding did nothing to change the elements of bribery under the honest-services fraud statute; the government is not required to prove a benefit to the payor to prove bribery.[5]

Even if the government were required to demonstrate a benefit to the bribe payor, however, this is a factual matter, which the government is prepared to prove at trial. While the defendant claims that he had only an altruistic motive for better government when he offered a $2 million bribe for the removal of the senior deputy commissioner charged with regulating his companies and her replacement with an individual of his choosing, the evidence will demonstrate otherwise.

Moreover, the defendant's claim that his altruistic motivation would be a defense to bribery is contradicted by a body of case law. *See, e.g.*, *United States v. Quinn*, 359 F.3d 666, 675 (4th Cir. 2004) ("It is not necessary for conviction under § 201(b) that the official act offered in exchange for the bribe be harmful to the government or inconsistent with the official's legal obligations."); *United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005) ("A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to

---

[5] The sentence of the *Skilling* opinion on which the defendant relies does not say what he claims. In support of his statement that "in the context of honest-services fraud predicated on public bribery, the official act must benefit the payor," the defendant relies on this sentence from the *Skilling* opinion: "The Government did not, at any time, allege that Skilling solicited or accepted side payments from a third party in exchange for making these misrepresentations." 561 U.S. at 413. This statement says nothing about a required benefit to the payor of the bribe.

10

other participants."); *United States v. Alfisi*, 308 F.3d 144, 151 (2d Cir. 2002) ("there is no lack of sound legislative purpose in defining bribery to include payments in exchange for an act to which the payor is legally entitled"); *United States v. Jannotti*, 673 F.2d 578, 601 (3d Cir. 1982) ("it is neither material nor a defense to bribery that had there been no bribe, the (public official) might, on the available data, lawfully and properly have made the very recommendation that (the briber) wanted him to make." (internal citation omitted)).

## IV. The Supreme Court Has Already Rejected Defendant's Constitutional Concerns.

The defendant's argument that a citizen has a constitutionally protected right to make campaign contributions in exchange for action has already been addressed and rejected by the Supreme Court. Cognizant of the constitutional fears expressed by the defendant, the Supreme Court previously observed that the political system requires the solicitation of money by candidates "who run on platforms and who claim support on the basis of their views and what they intend to do or have done." *McCormick*, 500 U.S. at 272. As a result, legislators cannot be subject to criminal liability merely for acting for the benefit of their constituents shortly before or after soliciting or receiving campaign contributions. *Id.* The line between protected expression and criminal conduct is crossed, however, when "payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act." *Id.* at 273. That is bribery in the context of campaign contributions. *Id.* To protect against the defendant's very concerns, the Supreme Court has held that campaign contributions can constitute bribes only if there is an "explicit" promise or agreement, meaning a "specific requested exercise" of

official power in exchange for something of value. *Id.*; *Evans v. United States*, 504 U.S. 255, 268 (1992).[6,7]

The Bill of Indictment here alleges, and the defendant does not dispute, that the defendant explicitly requested the removal and replacement of the senior deputy commissioner assigned to regulate his companies in exchange for $2 million in campaign contributions. This is sufficient to state a violation of federal bribery law under *McCormick*.

Furthermore, the very cases on which the defendant relies have already rejected his concerns regarding the "First Amendment, federalism, and vagueness." Motion at 3, 19-22. The very basis cited by the *McDonnell* Court for its decision regarding the definition of "official act" was to address these issues. 136 S. Ct. at 2372-73. Stated differently, the *McDonnell* Court held that as long as the government properly alleges—as it did here—the proposed exchange of something of value for an "official act," the constitutional concerns regarding the First Amendment, vagueness, and federalism are avoided. 136 S. Ct. at 2372-73. Likewise, in *Skilling*, the Supreme Court held that the honest-services statute is not vague: "Interpreted to encompass only bribery and kickback schemes, § 1346 is not unconstitutionally vague." 561

---

[6] The article on which the defendant relies for his hypothetical—*See* Eli Rosenberg, *Collins blasted 'dark money' groups in Kavanaugh fight. One just paid to thank her for her vote*, WASH. POST, Oct. 12, 2018—does not set forth a bribery scheme. According to the article, a group paid for advertising "thanking Sen. Susan Collins (R-Maine) for her vote supporting the nominee [Justice Brett M. Kavanaugh]." Nothing in the article sets forth an explicit agreement between the group and the Senator to provide campaign contributions in exchange for her vote.

[7] The defendant's concern that "patronage appointees" could be held criminally liable based on "the correlation between their donations and appointments" because "the *quid pro quo* giving rise to criminal liability 'need not be explicit'" (Motion at 20, 22) is wrong. In the context of campaign contributions, the Supreme Court has held that the promise or agreement must be "explicit." *McCormick*, 500 U.S. at 273; *Evans*, 504 U.S. at 258. Thus, hopeful appointees may continue to contribute money in the hopes they will be appointed to office, but they may not condition their contributions on a promise of appointment.

U.S. at 412.  Further, *Skilling* also rejected the defendant's fair notice argument, emphasizing that "it has always been 'as plain as a pikestaff that' bribes and kickbacks constitute honest-services fraud."  561 U.S. at 412.  Finally, as to the defendant's concern that Section 666 impermissibly allows the federal government to intrude on ethical matters properly left to the state, the Supreme Court has rejected this argument and upheld the use of Section 666 "to safeguard the integrity of the state, local, and tribal recipients of federal dollars."  *Sabri v. United States*, 541 U.S. 600, 605 (2004).

V. **Section 666 Does Not Require Proof of an "Official Act"**

The defendant incorrectly asserts that the government must plead and prove "an official act" to sustain a conviction under 18 U.S.C. § 666.  While the Fourth Circuit has not addressed this issue, the courts that have addressed it have squarely rejected it.  *See, e.g.*, *United States v. Ng Lap Seng*, 934 F.3d 110, 138 (2d Cir. 2019); *United States v. Porter*, 886 F.3d 562, 565-66 (6th Cir. 2018); *United States v. Maggio*, 862 F.3d 642, 646 n.8 (8th Cir. 2017).

Most recently, the Second Circuit rejected the very same argument the defendant makes here, holding that Section 666 does not require proof of an "official act."  *Ng Lap Seng*, 934 F.3d at 138.  In doing so, the court noted that Congress is charged with defining "the particular *quids* and *quos* prohibited" under the varying federal bribery statutes.  *Id.* at 132.  In proscribing the bribery of federal officials under Section 201, "Congress has prohibited corruptly giving such an official 'anything of value' (the *quid*) 'to influence *any official act*' (the *quo*)."  *Id*. (emphasis in original).  Not all federal bribery statutes, however, require an "official act" as the necessary *quo* for bribery.  *Id.*  And, indeed, Section 666 does not.  *Id.*  Rather, Section 666, "prohibits bribery concerning programs receiving federal funding, [and] makes it a crime corruptly to give a person anything of value (the *quid*) 'with intent to influence . . . an agent of an organization or of a

13

State, local or Indian tribal government,' any part of which receives federal funding, 'in connection with any business, transaction, or series of transactions of such organization . . . involving anything of value of $5,000 or more' (the quo)." *Id.* Thus, no "official act" is required. *Id.* at 132-33.

Contrary to the defendant's assertion, the Fourth Circuit did not hold that Section 666 requires proof of an "official act" in *United States v. Jennings*, 160 F.3d 1006 (4th Cir. 1998), a case decided more than a decade before *McDonnell*. In *Jennings*, the defendant argued that Section 666 prohibited "bribes" (*i.e.*, a proposed *quid pro quo*), but not "gratuities" (*i.e.*, a tip or reward for favorable action), claiming that he had only paid the latter. *Id.* at 1012. The court, however, declined to reach the issue of whether Section 666 prohibited both bribes and gratuities, as it found that the defendant had committed bribery. *Id.* at 1015. While the *Jennings* Court used the term "official act," as it compared Section 201 and Section 666, it did not use it as a term of art in the way that has been employed post-*McDonnell*, and the *Jennings* Court was never presented with the question of whether Section 666 requires an "official act" as the defendant now asserts. 160 F.3d at 1012-14.

Thus, while the Bill of Indictment here properly alleges an "official act," there is no such requirement for Count Two, which alleges a violation of Section 666(a)(2).

## CONCLUSION

In sum, the Bill of Indictment properly alleges that the defendant offered a public official, the elected Insurance Commissioner, $2 million in campaign and other contributions in exchange for an "official act," to wit, the removal and replacement of the senior deputy commissioner in charge of regulating the defendant's insurance companies. As such, the Bill of Indictment complies with *McDonnell* and *Skilling*, and properly states an offense. All other matters should

14

be left to a properly instructed jury at trial.  The United States respectfully requests that this court deny the defendant's Motion to Dismiss the Indictment.

Dated:  September 25, 2019		R. ANDREW MURRAY
					UNITED STATES ATTORNEY

					*s/ William Stetzer*
					*s/ Dana Washington*
					William Stetzer
					Dana Washington
					Assistant United States Attorneys

					JOHN D. KELLER
					ACTING CHIEF, PUBLIC INTEGRITY
					SECTION

					*s/ James C. Mann*
					James C. Mann
					Trial Attorney

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this day, September 25, 2019, the foregoing was duly served upon counsel for the defendant by electronic notification from the Court to:

Brandon N. McCarthy, Esq.
brandon.mccarthy@katten.com

                                        R. ANDREW MURRAY
                                        UNITED STATES ATTORNEY

                                        *s/ Dana O. Washington*
                                        DANA O. WASHINGTON
                                        ASSISTANT UNITED STATES ATTORNEY