IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Statesville Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GREG E. LINDBERG, *et al.*,<br><br>*Defendants.* | No. 5:19-cr-22-MOC |

**REPLY IN SUPPORT OF GREG E. LINDBERG'S MOTION
TO DISMISS THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE**

Facing a motion to dismiss that reveals the indictment's defective allegations of an "official act"—a required element of the charged offenses—the government has changed its theory mid-case. No longer is the alleged official act only "the removal of the Senior Deputy Commissioner," Jackie Obusek. Indictment ¶ 14, Dkt. No. 3. Instead, in an attempt to distinguish *McDonnell v. United States*, 136 S. Ct. 2355 (2016), the government now argues that the relevant official act was the "replacement of the senior deputy commissioner—not with 'anyone'—but with a person of [Mr. Lindberg's] choosing": defendant John Palermo. Gov't Opp'n 8 & n.4, Dkt. No. 69; *see also id.* at 3, 7.

For four reasons, the Court must reject this belated attempt to fix the indictment's fatal flaws:

*First*, the indictment does not identify the replacement of Ms. Obusek with Mr. Palermo as the relevant official act—and for good reason. As the indictment itself confirms, Mr. Lindberg did not agree with Commissioner Mike Causey on the hiring of Mr. Palermo, or another specific person, to replace Ms. Obusek; Mr. Causey did not hire Mr. Palermo; and both sides abandoned the idea of doing so before any quid was allegedly presented in exchange for a quo. The indictment instead identifies a different basis for satisfying the official-act requirement: the removal of Ms. Obusek.

But this alleged conduct does not satisfy *McDonnell*. Requesting that "anyone other than a particular official be given the authority to take official action on future matters" is not "akin to a

1

lawsuit or administrative determination" and is, therefore, not an official act. Mem. in Supp. of Mot. to Dismiss Indictment 16, Dkt. No. 64-1. Holding otherwise would raise constitutional concerns and impede constituents' efforts to demand better government from their elected officials—activity that is at the heart of the First Amendment. *Id.* at 17-23.

*Second*, even if the indictment identified the relevant official act as the replacement of Ms. Obusek with "a person of [Mr. Lindberg's] choosing," the indictment would still fail the two-prong *McDonnell* test. The indictment would fail the second prong because, as noted above, Mr. Causey never agreed to hire Mr. Palermo and thus never made a decision "on" the matter. *McDonnell*, 136 S. Ct. at 2368. And it would fail the first prong because requesting an official to hire someone is not a "formal exercise of governmental power" akin to a "lawsuit, hearing, or administrative determination." *Id.* Again, deeming this request criminal would impinge on First Amendment and other constitutional rights. The government's out-of-Circuit, non-binding authority does not change that conclusion.

*Third*, the Section 666(a)(2) charge also must be dismissed due to the lack of an official act. *See* Indictment ¶¶ 85-86. The Fourth Circuit has held that Section 666(a)(2) requires proof of an official act. *McDonnell* provides further support for that precedent. And it is not undermined by dicta in the Second Circuit's decision in *United States v. Ng Lap Seng*, 934 F.3d 110 (2d Cir. 2019), or the other non-binding authority cited by the government.

*Finally*, the indictment does not identify conduct that constitutes "core" bribery. Under *Skilling v. United States*, 561 U.S. 358 (2010), honest-services fraud requires proof of a benefit to the payor. The government has cited no post-*Skilling* decision that extinguishes this requirement. Here, the requested staffing change would not have necessarily benefited Mr. Lindberg. Thus, *Skilling* provides an independent basis for the Court to dismiss the indictment against Mr. Lindberg.

**ARGUMENT**

The government is incorrect that the jury, rather than the Court, must decide the legal definition of "official act." Gov't Opp'n 4-5. Before trial, a defendant may move to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). And the Court must grant the motion if the "indictment fails to allege facts which constitute a prosecutable offense." *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983). Thus, where there is "an infirmity of law in the prosecution" contained in the indictment, a case should not reach a jury. *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). That is the situation here. Because Mr. Lindberg's indictment fails to allege either an official act—a required element of all charges against him—or a bribery scheme that benefitted him, the Court must dismiss the indictment.

**I.   The Indictment's Only Basis for Meeting the Official-Act Element—the Requested Removal of a Government Employee—Does Not Satisfy *McDonnell*'s Requirements.**

The indictment alleges only one potential official act: the requested removal of Ms. Obusek.[1] The government has now retreated from the indictment's plain text. Through its opposition, the government argues that the relevant "official act" is the replacement of Ms. Obusek specifically with a person of Mr. Lindberg's choosing. But the indictment does not list the hiring of Mr. Palermo or anyone else as the relevant official act. Thus, the only question before this Court is whether the requested removal of Ms. Obusek meets both prongs of the *McDonnell* test. It does not.

**A.   The Indictment Does Not Identify the Replacement of Ms. Obusek with a Person of Mr. Lindberg's Choosing as an Official Act.**

When assessing an indictment's sufficiency, a court's review is "limited to the allegations contained in the indictment." *Engle*, 676 F.3d at 415. A court may not examine evidence outside the

---

[1] Note that it is undisputed that Ms. Obusek would not have been terminated from her position but simply removed from matters related to Mr. Lindberg (much like a recusal for a personal conflict).

3

indictment. *See id.* Thus, in deciding whether this indictment satisfies *McDonnell*, this Court must examine only the purported official act alleged in the indictment.

The only "specific official action" alleged in the indictment is "the removal of the Senior Deputy Commissioner of the [North Carolina Department of Insurance]," Jackie Obusek. Indictment ¶ 14. The indictment identifies no other potential official act. In fact, in an e-mail to Mr. Lindberg's counsel, the government "agree[d] that the only official act alleged in the indictment is the removal and replacement of Senior Deputy Commissioner A."

Nonetheless, in its opposition, the government attempts to change course. It now argues that the alleged official act includes the "replacement of the senior deputy commissioner—not with 'anyone'—but with a person of [Mr. Lindberg's] choosing." Gov't Opp'n 8 n.4.

But the government's argument is barred. The indictment does not identify the relevant official act as the hiring of Mr. Palermo or any other specific person to replace Ms. Obusek. Thus, this Court cannot consider whether the hiring of a specific person is an official act under *McDonnell*. It may consider only whether the removal of an employee and her replacement with *anyone* is an official act.

Even if the Court could look outside the indictment, Mr. Causey and Mr. Lindberg never reached an agreement to hire Mr. Palermo or another specific person to replace Ms. Obusek. The indictment confirms this: Though Mr. Palermo was mentioned as a possible replacement, Mr. Causey decided not to hire Mr. Palermo, and Mr. Lindberg supported that decision. Indictment ¶¶ 36, 41-43.

      **B.**     **The Requested Removal Does Not Meet Either Prong of *McDonnell*.**

Thus, the only question is whether the removal of a government employee is an official act. As explained in Mr. Lindberg's motion, *McDonnell* defines a two-part test for answering this question. *See* Mem. in Supp. of Mot. to Dismiss Indictment 13. Neither prong is met here.

4

Case 5:19-cr-00022-MOC-DSC   Document 74   Filed 10/02/19   Page 4 of 15

### 1. The removal of a government employee is not a "matter" or "question" under the first prong of *McDonnell* because it is not akin to a lawsuit, hearing, or administrative decision.

The removal of an employee is not a "matter" or "question" because it is not "a formal exercise of governmental power that is similar in nature to a lawsuit, administrative determination, or hearing." *McDonnell*, 136 S. Ct. at 2370. The removal of an employee may affect who makes an administrative decision. But it is not a "matter" or "question" for the same reasons that the conduct in *McDonnell* did not qualify as one. In *McDonnell*, the government argued that Governor McDonnell performed an official act when he arranged meetings between Jonnie Williams, who had given him financial contributions, and State officials in charge of decisions on research studies for Williams's company. *Id.* at 2365-66. The Supreme Court noted that "a decision or action to initiate a research study—or a decision or action on a qualifying step, such as narrowing down the list of potential research topics—would qualify as an 'official act.'" Id. at 2370. But it held that setting up a meeting to talk about a research study is not a "matter" or "question" because it is not "of the same stripe as a lawsuit before a court, a determination before an agency, or a hearing before a committee." *Id.* at 2369; *see id.* at 2370.

The government cites no case that holds that removing an employee is a "question, matter, cause, suit, proceeding or controversy" that qualifies as an official act. 18 U.S.C. § 201(a)(3). Instead, the government insists that the removal of an employee is a "matter" under the honest-services fraud statute because it is "focused, concrete, and within the specific duties of the Commissioner" and because it is "the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." Gov't Opp'n 8. But this argument does not address whether removal of an employee is a "matter." It addresses only separate requirements of the honest-services fraud statute: that the alleged "matter" be one that "may at any time be pending" and that "may by law be brought" before an official. 18 U.S.C. § 201(a)(3). *McDonnell* confirms that these requirements are separate:

> In addition to the requirements we have described, § 201(a)(3) states that the question or matter must be "pending" or "may by law be brought" before "any public official." "Pending"

5

and "may by law be brought" suggest something that is relatively circumscribed—the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete. In particular, "may *by law* be brought" conveys something within the specific duties of an official's position—the function conferred by the authority of his office.

*McDonnell*, 136 S. Ct. at 2369. Thus, these requirements are relevant only once the government proves the existence of a "matter" that satisfies *McDonnell*. Here, the government ignores that threshold step.

The Court must reject the government's invitation to hold that any action that meets the definitions of "pending" and "may by law be brought" is a "matter" under the honest-services fraud statute. Doing so would contradict *McDonnell*. In *McDonnell*, each action at issue was also "focused, concrete, and within the specific duties of" Governor McDonnell and was "the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." Yet none of his actions were held to be official acts because they involved neither "matters" nor "questions." *Id*.

The government's cited examples of official acts—the appointment of bribe payor to an ambassadorship, the hiring of a person to a congressional staff, the obtaining of a resolution by a speaker of a state, and the attempt to obtain disclosure of text messages from the FBI—likewise do not prove the existence of an official act here. Gov't Opp'n 7. Each example comes from a non-binding decision. And each example is distinguishable.

First, the appointment of someone to an ambassadorship is a duty imposed on a President by the Constitution, and it requires Senate approval. *United States v. Fattah*, 914 F.3d 112, 155 (3d Cir. 2019). No similar nomination or legislative process is required for the removal of a deputy commissioner in a State insurance department. And unlike a request to appoint an ambassador, the request to remove and replace Ms. Obusek did not require the hiring of any specific person.

Second, assuming that the Third Circuit correctly held that the hiring of a person to a congressional staff is an official act, *id*. at 156, Mr. Lindberg made no such request here. As alleged in the indictment, Mr. Lindberg asked only for Ms. Obusek's removal, but neither Mr. Causey nor Mr. Lindberg agreed on the hiring of a specific person to replace her.

6

Third, obtaining a resolution from a State legislature requires legislative action, which is a paradigmatic example of a "formal exercise of governmental power." *McDonnell*, 136 S. Ct. at 2369. But in Mr. Lindberg's case, no legislative action occurred.

Fourth, the disclosure of communications by a task force officer for the FBI involves an "administrative determination" to release content. These disclosures are governed by the Stored Communications Act, 18 U.S.C. §§ 2701-2712, which requires that the "disclosure of this content" be "made in the *proper* performance of the official functions of the [law enforcement] officer . . . making the disclosure." *United States v. Jones*, 207 F. Supp. 3d 576, 582 (E.D.N.C. 2016) (quoting 18 U.S.C. § 2707(g)). So the disclosure of communications necessarily involves official action in accordance with a statutory scheme. In contrast, the removal of Ms. Obusek would have resulted in a new decision-maker, but it would not have resulted in a similar administrative decision.

> **2. The removal of an employee does not meet the second prong of *McDonnell* because it is not a decision "on" any other matter that might qualify as an official act.**

The requested removal of Ms. Obusek also fails *McDonnell*'s second prong because it is not a decision or action "on" any other matter that might qualify as an official act, like the evaluations of Mr. Lindberg's companies.

In *McDonnell*, the Supreme Court acknowledged that "a decision or action to initiate a research study" is an official act. *McDonnell*, 136 S. Ct. at 2370. But under the second prong of *McDonnell*, it held that "[s]etting up a meeting . . . to talk about a research study or to gather additional information" is not "a decision or action" on "whether to initiate the study." *Id.* at 2371.

Similarly, while a decision on an examination of Mr. Lindberg's companies might qualify as an official act, the removal of an official who oversees the examination does not. The indictment never alleges that Mr. Lindberg demanded a positive evaluation of his companies. Indeed, no evaluations of his companies were ongoing at the time. Indictment ¶ 4. Rather, Mr. Lindberg is alleged to have asked

7

for Ms. Obusek's removal because she was "deliberately and intentionally and maliciously hurting [his] reputation" in the insurance industry and was "lying . . . to hurt [his] name." *Id.* ¶ 31. Removal of a biased employee is not an official act under the second prong of *McDonnell*—even if the employee herself performs official acts.

## II. Even if the Indictment Purported to Rely Upon a Request to Hire a Specific Person as an Official Act, It Would Still Not Satisfy *McDonnell*.

Even if the indictment attempted to rely upon the hiring of Mr. Palermo or someone else as an official act—which it does not—that conduct would still not meet the requirements of *McDonnell*'s test for two reasons. First, it would not meet the second prong of the official-act test, which requires the government to "prove that the public official made a decision or took an action 'on' [the] question, matter, cause, suit, proceeding, or controversy, or agreed to do so." *Id.* at 2368. Second, the hiring of an employee is not a "matter" or "question" under the first prong of the official-act test.

### A. The Government's Theory Fails *McDonnell*'s Second Prong Because Mr. Causey Never Made a Decision "On" the Hiring of a Specific Person.

Although a payor might ask a government official to hire someone who favors the payor, that request would not become "a decision or action on" a pending matter or question under the second prong of the official-act test unless the official chose or agreed to hire the person. *McDonnell*, 136 S. Ct. at 2371. An official's consideration of a suggested hire is no more an "official act" than his "expressi[on of] support for [a] research study at a meeting." *Id.*

According to the indictment, Mr. Causey never hired or agreed to hire Mr. Palermo or any other person. While Mr. Lindberg mentioned Mr. Palermo as a potential hire, Mr. Causey ultimately did not hire him—a choice that Mr. Lindberg supported. Indictment ¶¶ 36, 41-43. And the possibility was abandoned long before Mr. Lindberg allegedly directed the payment of a campaign contribution for Mr. Causey's benefit. *Id.* ¶¶ 41-43, 50. Thus, even if the indictment identified Mr. Palermo's hiring

8

as an official act, the theory would fail *McDonnell*'s second prong because the facts alleged in the indictment do not support that theory.

This difference distinguishes this case from *United States v. Fattah*, 914 F.3d 112 (3d Cir. 2019), the chief authority upon which the government relies. In *Fattah*, unlike here, the hiring decision was consummated. *Id.* at 139 (explaining that a congressman "hired" the girlfriend of a bribe payor, and that she worked in his office for "about two months"). Thus, "the public official made a decision or took an action 'on'" the conduct alleged to have been an official act—the hiring of the bribe payor's girlfriend. *Id.* at 156. Because nothing of the sort is alleged here, *Fattah* does not help the government.

### B. The Hiring of a Person Is Not a "Matter" or "Question" Under *McDonnell*'s First Prong.

This Court should also hold that the hiring of a person fails the first prong of the official-act test. Hiring a specific person as a senior deputy commissioner does not qualify as a "matter" or "question" under *McDonnell*. The hiring decision affects only who gets to decide future matters or questions, but it does not guarantee any particular outcome. In that regard, it is similar to the conduct alleged in *McDonnell*. There, Governor McDonnell selected a specific official, who was capable of deciding a constituent's request, to meet with the constituent. *McDonnell*, 136 S. Ct. at 2370. The Supreme Court held that this conduct was not an official act. *Id.* at 2369-71.

The government cites only one case that held that hiring an employee was an official act. In *Fattah*, the Third Circuit held that hiring a person to a congressional staff was an official act. *See* 914 F.3d at 156-57. But *Fattah* does not bind this Court, and the Court should not follow it for two reasons.

As an initial matter, the Third Circuit provided no reasoning to support its conclusion that the hiring of a congressional staffer was a "matter" under the first prong of the official-act test. The Third Circuit's analysis consists of one conclusory sentence: "Here, under *McDonnell*'s Step 1(A), the relevant 'matter' is the decision to hire Zionts," the hiree at issue. *Id.* at 156. The opinion never explains why this hiring resembles a lawsuit, hearing, or administrative determination, as required by *McDonnell*. Its

9

analysis instead focuses mostly on the other two requirements of the statute: that a matter be one that is "pending" and "may by law be brought" before an official. *Id.* at 156-57. As explained above, those requirements are separate from whether something qualifies as a "matter" under *McDonnell*.

In addition, the Third Circuit did not address the constitutional implications of its interpretation. Prosecuting someone based on the hiring of a State employee raises the same federalism and vagueness concerns that were implicated in *McDonnell*. It also raises similar First Amendment concerns. A constituent could be prosecuted for contributing money to a State or federal official and asking the official to hire employees who support a preferred public-policy position, whether that position is national in scope, like the regulation of electronic cigarettes, or purely local, like the pothole priorities of a public-works department. Constituents have the right to lobby their elected officials to hire people who represent their views on big and small issues—and to fire those who do not.

### III. Both Honest-Services Fraud and Section 666(a)(2) Require Proof of an Official Act, and Therefore, Both Charges Must Be Dismissed.

The failure to allege an official act is fatal to the honest-services fraud count against Mr. Lindberg. *See McDonnell*, 136 S. Ct. at 2361, 2375. It is equally fatal to the Section 666(a)(2) count.

In *United States v. Jennings*, 160 F.3d 1006 (4th Cir. 1998), the Fourth Circuit held that Section 666(a)(2) requires proof of an official act. The Court repeatedly referred to "official act[s]" or "official action" in the opinion, and it affirmed the conviction precisely because a "reasonable juror could have concluded that there was a course of conduct involving" payments of bribes "in exchange for a pattern of official actions favorable to [defendant's] companies." *Id.* at 1012-14, 1018. This holding remains good law in light of *McDonnell*, which does not address Section 666's requirements.

The Fourth Circuit's holding in *Jennings* makes sense. Section 666 is a direct outgrowth of Section 201, which defines "official act," *Jennings*, 160 F.3d at 1012-13, and which was used by the Supreme Court as a basis for interpreting the honest-services fraud statute in *McDonnell*. Section 666 was enacted only to resolve a circuit split as to whether State and local officials could be prosecuted

10

under Section 201. It would make little sense to require proof of an official act for the honest-services fraud statute, which is unrelated to Section 201, but to not require the same proof for Section 666, which is directly related to Section 201. *See* Mem. in Supp. of Mot. to Dismiss Indictment 9-11.

The government ignores all of this. Instead, it relies on three non-binding decisions, each of which reasons that because the term "official act" does not appear explicitly in Section 666, this Court should impose no such requirement. *See* Gov't Opp'n 13-14. But the same could be said for the honest-services fraud statute; it does not use the phrase "official act." And yet the Supreme Court imported that requirement from Section 201 to avoid serious constitutional issues about the scope of the honest-services fraud statute. The *Jennings* decision avoids similar constitutional issues by imposing the "official act" requirement on Section 666 prosecutions.

The government does not consider the serious constitutional issues that would be posed by not including the same "official act" limitation in Section 666. For example, the government could have charged former Governor McDonnell with a violation of Section 666 on the theory that the meetings and studies that he was helping to procure were a "thing of value of $5,000 or more." 18 U.S.C. 666(a)(1)(B). Yet that prosecution would have presented the same First Amendment, federalism, and vagueness concerns that plagued his prosecution for honest-services fraud.

Moreover, as Mr. Lindberg pointed out, the government's argument would mean that Section 666, which is aimed at State and local officials, is broader than Section 201, Section 666's counterpart for bribery involving federal officials. Mem. in Supp. of Mot. to Dismiss Indictment 10. The federalism concerns that underlie *McDonnell*'s holding should preclude that absurd result.

The government's principal authority for its argument, *United States v. Ng Lap Seng*, 934 F.3d 110 (2d Cir. 2019), does not override *Jennings* for two reasons. First, as a Second Circuit decision, *Ng Lap Seng* is non-binding. This Court must follow the precedential *Jennings* decision until told otherwise by the Fourth Circuit or the Supreme Court. Second, the holding of *Ng Lap Seng* is only that proof of

11

an "official act" is not required for "§ 666 as applied to non-government 'organizations,'" which this case does not involve. *Id.* at 137. The Second Circuit's discussion of Section 666's requirements as applied to government entities is dicta, because that case did not implicate a government entity. *See Wright v. Spaulding*, No. 17-4257, 2019 WL 4493487, at *5 (6th Cir. Sept. 19, 2019) (explaining that a discussion is dicta if it does not "contribute to the judgment," and the court did not "rest [its] judgment" on the discussion). So *Ng Lap Seng*'s analysis of Section 666's requirements for government entities not only does not bind this Court; it also does not bind the Second Circuit. Thus, nothing in *Ng Lap Seng* relieves this Court of its obligation to follow *Jennings*.

## IV. The Indictment Is Also Defective Because It Fails to Allege a Core Bribery Scheme Under *Skilling*.

In addition to *McDonnell*, the Supreme Court's decision in *Skilling v. United States*, 561 U.S. 358 (2010), provides an independent basis for dismissing this prosecution. In *Skilling*, the Supreme Court held that honest-services fraud covers only "core" or "prototypical" bribery where a payor gives something to a payee and the payor receives a benefit. *Id.* at 409, 413. Thus, the Supreme Court rejected the prosecution of a defendant who had profited from a fraud scheme but had not received anything of value from a third party in exchange for his misrepresentations. *Id.* at 413.

This indictment does not allege any benefit to Mr. Lindberg or his associates, as required by *Skilling*. Nor could it. He would not have profited from any contributions to Mr. Causey because the removal of Ms. Obusek did not assure better outcomes for him or his companies. Nor did it even make better outcomes more likely, since Ms. Obusek could have been replaced with anyone.

Contrary to the government's view, the Supreme Court's holding in *Skilling* applies to this case. Gov't Opp'n 9. In *Skilling*, the Supreme Court rejected the government's theory that honest-services fraud covers "undisclosed self-dealing" precisely because that conduct did not constitute prototypical bribery. *Id.* at 410. In so holding, the Supreme Court made clear that the honest-services fraud statute covers only situations in which a bribe payor profits from a bribe or receives a kickback. *Id.* at 413.

12

The government's circuit-level authorities do not undermine *Skilling*. Gov't Opp'n 10-11. All of those decisions were issued before *Skilling*, which clarified this requirement in the honest-services fraud statute. Thus, the Court cannot rely on them. But regardless, none of them hold that a benefit is not required in honest-services fraud or bribery convictions. In fact, two of the cases explicitly mention a benefit to either the defendant or someone else in a fraudulent scheme. *See United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005) (noting only that when a defendant is charged in a "scheme to defraud," the benefit can accrue to another participant in the scheme); *United States v. Alfisi*, 308 F.3d 144, 148, 150-51 (2d Cir. 2002) (noting that a payor can be guilty of bribery if he pays for the payee to "inspect and report accurately on [the payor's] produce," even if that benefit is one that the payor is legally entitled to receive). And the two other cases address only prosecutions of payees. *United States v. Quinn*, 359 F.3d 666, 670-71, 675 (4th Cir. 2004); *United States v. Jannotti*, 673 F.2d 578, 580, 601 (3d Cir. 1982). The courts in those cases had no occasion to say whether the government must prove a benefit to a payor, and their opinions say nothing about that topic.

Finally, the jury should not get to decide whether Mr. Lindberg received any benefit. Gov't Opp'n 10. A case should never go to a jury if the "indictment fails to allege facts which constitute a prosecutable offense." *Coia*, 719 F.2d at 1123. The indictment here does not state a prosecutable offense because it does not allege facts showing that Mr. Lindberg benefited from any contribution.

## CONCLUSION

For the foregoing reasons, the Court should dismiss in full the indictment of Mr. Lindberg under Federal Rule of Criminal Procedure 12(b)(3)(B)(v).

13

Case 5:19-cr-00022-MOC-DSC    Document 74    Filed 10/02/19    Page 13 of 15

Dated: October 2, 2019                                   Respectfully submitted,

/s/ Brandon McCarthy
Brandon McCarthy (admitted *pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
1717 Main Street, Suite 3750
Dallas, TX 75201
214-765-3600
brandon.mccarthy@katten.com

Jeffrey C. Grady
N.C. State Bar No. 32695
KATTEN MUCHIN ROSENMAN LLP
550 S. Tryon Street
Suite 2900
Charlotte, NC 28202-4213
704-444-2036
jeff.grady@katten.com

*Counsel for Defendant Greg Lindberg*

# CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2019, I electronically filed the foregoing reply brief with the Clerk of Court using the CM/ECF system, which will send notification to counsel of record.

Dated: October 2, 2019

Respectfully submitted,

/s/ Brandon McCarthy
Brandon McCarthy (admitted *pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
1717 Main Street, Suite 3750
Dallas, TX 75201
214-765-3600
brandon.mccarthy@katten.com

*Counsel for Defendant Greg Lindberg*