IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Statesville Division

UNITED STATES OF AMERICA,

v.

GREG E. LINDBERG, *et al.*,

    *Defendants.*

No. 5:19-cr-22-MOC-DSC

**DEFENDANT GREG E. LINDBERG'S TRIAL BRIEF**

This trial brief addresses evidentiary issues, the law governing this case, and issues related to entrapment. It first discusses the admissibility of evidence that bears on a witness's credibility. It then provides a general overview of certain key elements of the law of conspiracy, honest-services wire fraud, and bribery under 18 U.S.C. § 666(a)(2). Finally, it discusses the law governing entrapment, the appropriateness of an entrapment instruction in this case, and evidence that may be admitted in support of an entrapment defense.

**I.    Evidence Bearing on Mr. Causey's Credibility.**

This case will likely involve evidence and testimony from a government informant, North Carolina Department of Insurance Commissioner Mike Causey. Thus, Mr. Lindberg will have a right to introduce evidence of Mr. Causey's "possible biases, prejudices, or ulterior motives" against Mr. Lindberg. *Davis v. Alaska*, 415 U.S. 308, 316 (1974). This evidence will be admissible because it is relevant to Mr. Causey's credibility as witness. *See United States v. Turner*, 198 F.3d 425, 430 (4th Cir. 1999) (finding that a "witness's understanding of the potential penalties faced prior to entering into a plea agreement may demonstrate bias and prejudice, as well as the motive of the witness for testifying against the defendant and for the prosecution," which was "highly relevant to testing the witness's credibility"); *United States v. Muse*, 83 F.3d 672, 676-77 (4th Cir. 1996*)* (finding district court gave "a full and proper instruction with regard to the factors involved in assessing witness credibility" when

instructing jury "to consider the witnesses' 'motives,' 'bias[ ] or prejudice[ ] for or against either side' and whether 'bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth'"). Indeed, "prohibiting a criminal defendant from cross-examining a witness on relevant evidence of bias and motive may violate the Confrontation Clause, if the jury is precluded from hearing evidence from which it could appropriately draw adverse inferences on the witness's credibility." *Turner*, 198 F.3d at 429. During trial, Mr. Lindberg plans to introduce evidence of Mr. Causey's bias, prejudice, and motives so that the jury may properly assess his testimony.

**II.    Law of Conspiracy, Honest-Services Wire Fraud, and § 666(a)(2) Bribery.**

Two counts are at issue in this case: conspiracy to commit honest-services wire fraud under 18 U.S.C. §§ 1343, 1346, and 1349, and theft or bribery concerning programs receiving Federal funds under 18 U.S.C. § 666(a)(2). The following sections generally describe the relevant statutes and then discuss three significant elements of these offenses.

**A.    Conspiracy to Commit Honest-Services Wire Fraud.**

Section 1349 states that "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Section 1343 is an offense under the same chapter. It provides, in relevant part, that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud . . . by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

Section 1346 clarifies that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." Wire fraud that involves a scheme to deprive another of the intangible right of honest services is known as honest-services wire fraud.

Since the Supreme Court's decision in *McDonnell v. United States*, parties in honest-services wire fraud cases have defined "a scheme or artifice to deprive another of the intangible right of honest services" with reference to 18 U.S.C. § 201, the federal bribery statute. 136 S. Ct. 2355, 2365 (2016). Section 201(b) states, in relevant part:

> Whoever . . . directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent . . . to influence any official act . . . shall be fined . . . or imprisoned for not more than fifteen years.

Post-*McDonnell*, this statute states two essential requirements for honest-services wire fraud: that the defendant gives something of value "with intent . . . to influence any official act" and that the defendant acts "corruptly."

Section 201 defines "official act." An official act is "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." *Id.* § 201(a)(3). In *McDonnell*, the Supreme Court interpreted this language and held that an official act has three requirements. First, there must exist a "question, matter, cause, suit, proceeding or controversy" that involves a "formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." 136 S. Ct. at 2372. Second, the "question, matter, cause, suit, proceeding or controversy" must be "something specific and focused that is 'pending' or 'may by law be brought' before a public official." *Id.* These will be "the kind[s] of thing[s] that can be put on an agenda, tracked for progress, and then checked off as complete" and that fall "within the specific duties of an official's position—the function conferred by the authority of his office." *Id.* at 2369. Third, "[t]o qualify as an 'official act,' the public official must make a decision or take an action on that 'question, matter, cause, suit, proceeding or

3

controversy,' or agree to do so." *Id.* at 2372. An official act does not exist unless the government proves each of these three elements beyond a reasonable doubt.

Section 201 does not define corrupt intent, but case law elucidates this requirement. Although the Fourth Circuit in *United States v. Jennings*, 160 F.3d 1006 (4th Cir. 1998), stated that "'corrupt intent' is the intent to receive a specific benefit in return for the payment," *id.* at 1013, the Supreme Court's subsequent decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005), clarifies that "corrupt" intent requires more. The Supreme Court observed that "'[c]orrupt' and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil." *Id.* at 705. Therefore, it held that the phrase "knowingly . . . corruptly persuad[e]" limited criminal liability only to those who were "conscious of wrongdoing." *Id.* at 706. Other courts and authorities have suggested similar definitions of the term "corrupt." *See, e.g.*, U*nited States v. Kay*, 513 F.3d 432, 446 (5th Cir. 2007) (defining "corrupt" under the Foreign Corrupt Practices Act as requiring "a bad purpose or evil motive of accomplishing either an unlawful end or result"); *United States v. Tomblin*, 46 F.3d 1369, 1380 (5th Cir. 1995) (approving instruction of "corrupt" in § 201 as acting with "unlawful purpose"); *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 822 (9th Cir. 1985) (finding corrupt intent where defendants were "aware of the illegality" of their conduct); *see also* Pattern Crim. Jury Instr. 5th Cir. 2.09A (2015) ("An act is 'corruptly' done if it is done intentionally with an unlawful purpose."). Indeed, after *Jennings*, even the Fourth Circuit has approved instructions that define "corruptly" in a way that is closer to *Arthur Andersen*'s definition. *See, e.g.*, *United States v. Quinn*, 359 F.3d 666, 674 (4th Cir. 2004).

Unlike the definition in *Jennings*, this more specific definition of "corrupt" also conforms with the rule that courts generally "must 'give effect . . . to every clause and word'" in a statute. *Setser v. United States*, 566 U.S. 231, 239 (2012) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)). *Jennings*'s definition of "corrupt intent" repeats other elements already present in the statute: that the defendant engage in a quid pro quo by "giv[ing], offer[ing], or agree[ing] to give anything of value to

4

any person, with intent to influence or reward" a State agent. 18 U.S.C. § 666(a)(2). Thus, *Jennings* effectively reads the word "corrupt" out of the statute or renders it superfluous. In contrast, the definition in *Arthur Andersen* and the other cited cases gives meaning to the word "corruptly."

The more specific definition of corrupt also avoids constitutional issues. For example, it will help ensure that federal laws do not punish innocent constituents who merely tell their elected representative that they will donate to her only if she votes for a strict environmental-protection law, hires a more responsive chief of staff, or allocates more funding to education—requests that should be protected by the First Amendment.

For these reasons, corrupt conduct involves conscious wrongdoing or a bad or evil state of mind, and it should be limited to acts done intentionally with an unlawful purpose.

Implicit in § 201 is also a third requirement: a quid pro quo. "[F]or bribery [under § 201] there must be a quid pro quo—a specific intent to give or receive something of value in exchange for an official act." *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404-05 (1999). In cases involving "political contributions," like this one, a quid pro quo exists "only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act." *McCormick v. United States*, 500 U.S. 257, 273 (1991). Absent a quid pro quo, a defendant's conduct is legal under the statute.

Because "a scheme or artifice to deprive another of the intangible right of honest services" is defined by reference to § 201, honest-services wire fraud incorporates these three essential elements of an official act, corrupt intent, and a quid pro quo. Thus, in a prosecution for conspiracy to commit honest-services wire fraud, the government must prove, beyond any reasonable doubt, an agreement or understanding to commit these elements, in addition to the other elements of wire fraud. *Salinas v. United States*, 522 U.S. 52, 65 (1997) ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense . . . .").

### B. Bribery Under § 666(a)(2).

Section 666(a)(2) provides, in relevant part:

> Whoever, if the circumstance described in subsection (b) of this section exists . . . corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more . . . shall be fined under this title, imprisoned not more than 10 years, or both.

Subsection (b) provides: "The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." Subsection (d) of § 666 defines the terms "agent," "government agency," "local," "State," and "in any one year period."

In addition to the elements stated in the statute, § 666(a)(2) shares many of the requirements of § 201. This makes sense, since § 666 is a direct outgrowth of § 201:

> Before § 666 was enacted in 1984, a circuit split raised doubt as to whether state and local officials could be considered "public officials" under the general statute, 18 U.S.C. § 201. Congress acted to mend the split without awaiting word on this issue from the Supreme Court. By enacting § 666 Congress supplemented § 201 to make clear that federal law prohibits "significant acts of . . . bribery involving Federal monies that are disbursed to private organizations or State and local governments pursuant to a Federal program."

*Jennings*, 160 F.3d at 1012-13 (citations omitted). Thus, like honest-services wire-fraud, § 666(a)(2) defines its language by drawing on the language of § 201, including the same three key elements discussed above.

First, § 666(a)(2) also requires proof of corrupt intent. Given the relationship between § 201 and § 666(a)(2), the word "corruptly" has the same meaning in § 666 as it does under § 201 and the honest-services wire fraud statute, as described above.

Second, § 666(a)(2) requires proof of a quid pro quo:

6

> Whether a payment is a bribe or an illegal gratuity under § 201 depends on the intent of the payor . . . . In other words, the payor of a bribe must intend to engage in some more or less specific quid pro quo with the official who receives the payment.

*Id.* at 1013 (international quotation marks omitted) (citations omitted). The quid pro quo required by § 666(a)(2) shares the same requirements as the quid pro quo element in § 201 and the honest-services wire fraud statute, as described above.

Third, the phrase "business, transaction, or series of transactions" must also have the same definition as the term "official act" in § 201 and honest-services wire fraud. Otherwise, § 666(a)(2) would raise the same constitutional concerns that led the Supreme Court to narrow the definition of "official act" in *McDonnell*: It would impinge on the First Amendment by causing "[o]fficials [to] wonder whether they could respond to even the most commonplace requests for assistance" and making "citizens with legitimate concerns . . . shrink from participating in democratic discourse." 136 S. Ct. at 2372. It would raise vagueness concerns by not defining the phrase with "sufficient definiteness" that allows "ordinary people [to] understand what conduct is prohibited" or "in a manner that does not encourage arbitrary and discriminatory enforcement" by the government. *Id.* at 2373 (quoting *Skilling v. United States*, 561 U.S. 358, 402-03 (2010)) (internal quotation marks omitted). And without a limited definition, the phrase's ambiguous "outer boundaries" would "involve[ ] the Federal Government in setting standards of good government for local and state officials." *Id.* (quoting *McNally v. United States*, 483 U.S. 350, 360 (1987)) (internal quotation marks omitted). Because § 666(a)(2) and honest-services wire fraud prosecutions often target the same conduct, the constitutional concerns that required a narrow definition of "official act" in *McDonnell* should require "business, transaction, or series of transactions" to share the same definition.

In sum, in addition to proving the other elements of § 666(a)(2) and honest-services wire fraud, the government must prove corrupt intent, a quid pro quo, and an official act to convict a defendant of either offense.

**III.     Law of Entrapment and Applicability to This Case.**

This case will also raise the issue of entrapment. "[E]ntrapment is a complete defense" to all charges. *United States v. Prytz*, 822 F. Supp. 311, 316 (D.S.C. 1993), *aff'd*, 35 F.3d 557 (4th Cir. 1994). "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988). Government inducement of the crime includes inducement by "federal, state or local law enforcement officials or their agents." *United States v. Perl*, 584 F.2d 1316, 1321 n.3 (4th Cir. 1978). "When the defendant in a criminal case adequately raises the affirmative defense of entrapment, the government has the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime charged." *United States v. Webster*, 649 F.2d 346, 347 (5th Cir. 1981) (en banc).

Mr. Lindberg is entitled to an entrapment instruction. "Even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Mathews*, 485 U.S. at 62. Here, Mr. Lindberg denies that he has committed the elements of the crimes, but regardless, there is sufficient evidence to justify an entrapment instruction. Indeed, based on the defendants' conferral with the government on jury instructions, the government itself will request an instruction on entrapment.

The defendants and government's agreement on the need for this instruction is unsurprising, given the allegations in the indictment and the evidence in this case. North Carolina Department of Insurance Commissioner Mike Causey began working with the FBI before the criminal activity alleged in the indictment occurred. As an agent for federal law enforcement, Mr. Causey was prohibited from entrapping the defendants. *See Perl*, 584 F.2d at 1321 n.3. But the evidence will show that he did exactly that. For example, after a meeting to discuss "various pending matters between GBIG," Mr. Lindberg's company, and the North Carolina Department of Insurance, Mr. Causey asked, "What's

8

in it for me?" to Mr. Lindberg. Indictment ¶ 35. In asking this question, he invited a bribe. *United States v. Sligh*, 142 F.3d 761, 766 (4th Cir. 1998) (noting that an entrapment instruction was warranted where a government agent "invited a bribe more explicitly by asking . . . in essence, 'What's in it for me?'"). Indeed, this Court has acknowledged that Mr. Causey's "question can amount to entrapment and thus may entitle a defendant to an entrapment jury instruction at trial." Dkt. No. 120 at 14. The trial evidence will show that Mr. Causey continued his efforts to induce Mr. Lindberg to commit a crime, despite Mr. Lindberg's lack of predisposition to do so.

The trial evidence will also show that Mr. Causey had strong motivation to entrap Mr. Lindberg: Mr. Lindberg was a major supporter of the former North Carolina insurance commissioner, Wayne Goodwin, whom Mr. Causey defeated in a 2016 election decided by less than one percentage point. The evidence will reveal that Mr. Causey then began working with the FBI to investigate Mr. Lindberg, even though the indictment does not allege any criminal activity by Mr. Lindberg before Mr. Causey approached law enforcement authorities. The evidence will also show that Mr. Causey, acting as the agent of federal law enforcement, consistently invited Mr. Lindberg to commit bribery.

In circumstances like these, a defendant can "assert that a particular agent participating in the government's activities was out to get him only because the agent harbored some personal prejudice against him." *Webster*, 649 F.2d at 351; *see United States v. Killough*, 607 F. Supp. 1009, 1010 (E.D. Ark. 1985) (acknowledging that "[t]he motives and the behind the scenes actions of government agents might possibly bear upon" an entrapment theory). Evidence of Mr. Causey's personal motivations and prejudice against Mr. Lindberg will help the jury decide whether Mr. Causey induced a crime. Without this evidence, the jury will not have the context needed to evaluate the roles of Mr. Causey and Mr. Lindberg in this case.

Respectfully Submitted,

/s/ Rajesh R. Srinivasan
Brandon N. McCarthy (admitted *pro hac vice*)
Rachel M. Riley (admitted *pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
1717 Main Street, Suite 3750
Dallas, TX 75201
214-765-3600
brandon.mccarthy@katten.com
rachel.riley@katten.com

Jeffrey C. Grady (N.C. Bar. No. 32695)
KATTEN MUCHIN ROSENMAN LLP
550 S. Tryon Street, Suite 2900
Charlotte, NC 28202
704-444-2036
jeff.grady@kattenlaw.com

Rajesh R. Srinivasan (admitted *pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
2900 K Street, NW – Suite 200
Washington, DC 20007
202-625-3500
rajesh.srinivasan@katten.com

Paul J. Johnson (admitted *pro hac vice*)
900 Jackson Street, Suite 650
Dallas, TX 75202
214-761-0707
pjjdoc@aol.com
*Counsel for Defendant Greg Lindberg*

# CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2020, I electronically filed the foregoing memorandum with the Clerk of Court using the CM/ECF CyberClerk system, which will send notification to counsel of record.

Dated: February 10, 2020

Respectfully submitted,

/s/ Rajesh R. Srinivasan
Rajesh R. Srinivasan (admitted *pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
2900 K Street, NW – Suite 200
Washington, DC 20007
202-625-3500
rajesh.srinivasan@katten.com

11
Case 5:19-cr-00022-MOC-DSC   Document 164   Filed 02/20/20   Page 11 of 11