IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 5:19-CR-022-MOC-DCK
CASE NO. 3:23-CR-048-MOC-DCK

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | ORDER |
| v. | ) | |
| GREG E. LINDBERG, | ) | |
| Defendant. | ) | |

**THIS MATTER IS BEFORE THE COURT** on the "Motion Of Defendant Greg Lindberg To Be Held At A Residential Reentry Center In Tampa, Florida, Pending Sentencing" 5:19-CR-022-MOC (Document No. 486); 3:23-CR-048-MOC (Document No. 41), filed November 11, 2024. This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate. Having carefully considered the motion and the record, including the arguments of counsel at two spirited hearings,[1] the undersigned will respectfully <u>deny</u> the motion. The undersigned further finds that the pending bond violations in these cases are <u>moot</u> following Defendant's consent to detention at his Plea and Rule 11 hearing, and will thus direct that these bond revocation proceedings be <u>terminated</u>.

### BACKGROUND

This matter presents a complex procedural history involving two related cases.

**I. Case No. 5:19-CR-022-MOC-DCK**

On March 18, 2019, Defendant Greg E. Lindberg ("Lindberg" or "Defendant") was indicted in case No. 5:19-CR-022-MOC, on charges of conspiracy to commit honest services fraud

---

[1] The undersigned greatly appreciates counsel's work on this complex matter.

under 18 U.S.C. §§ 1343, 1346, and 1349 and federal funds bribery under 18 U.S.C. §§ 666(a)(2), 2. (Document No. 3). On April 2, 2019, the undersigned entered an Order (Document No. 16) setting Defendant's conditions of release on an unsecured bond pending trial. A jury trial was held in February and March of 2020 before the Honorable Max O. Cogburn, Jr. On March 5, 2020, Defendant was found guilty of both charges. (Document No. 193). On August 19, 2020, Defendant was sentenced to be imprisoned for a term of eighty-seven (87) months.

On September 2, 2020, Defendant filed a Notice Of Appeal with the Fourth Circuit Court of Appeals. (Document No. 259). On June 29, 2022, the Fourth Circuit issued an opinion vacating Defendant's convictions and remanding the case for a new trial. (Document No. 321). Following the Fourth Circuit's decision, on July 14, 2022, Defendant was released from custody pending further proceedings pursuant to the original bond conditions. (Document No. 334).

A second jury trial was held in May 2024, again before Judge Cogburn. On May 15, 2024, a second jury returned a verdict of guilty against Defendant on both charges. (Document No. 435). Defendant is currently awaiting sentencing on these charges.

On September 19, 2024, the undersigned approved the issuance of a summons to Defendant to answer for a reported violation of his bond conditions in this case. (Document No. 474). The Violation Report alleges a new law violation for misdemeanor criminal contempt in Wake County, North Carolina, for failure to appear for a civil hearing. Id.

   **II.    Case No.  3:23-CR-048-MOC-DCK**

On February 23, 2023, Defendant was indicted in case No. 3:23-CR-048-MOC on the following charges: conspiracy to defraud the United States in violation of 18 U.S.C. § 371; wire fraud in violation of 18 U.S.C. § 1343; false insurance business statements presented to regulators in violation of 18 U.S.C. §§ 1033(a), 2; false entries about the financial conditions or solvency of

an insurance business in violation of 18 U.S.C. §§ 1033(c), 2; and money laundering conspiracy in violation of 18 U.S.C. § 1956(h). (Document No. 1). On March 2, 2023, the undersigned entered an Order (Document No. 6) setting Defendant's conditions of release on an unsecured bond pending trial.

On September 10, 2024, the undersigned approved the issuance of a summons to Defendant to answer for a reported violation of his bond conditions in this case. (Document No. 29). The Violation Report alleges a new law violation for the same misdemeanor criminal contempt in Wake County, North Carolina, for failure to appear for a civil hearing, as was reported in the related case. Id. The Violation Report in this case further alleges a violation of the condition of Defendant's bond which states that Defendant "shall not while on release knowingly take any action to materially injure any victim of the alleged scheme, including the policyholders of such victims; and [D]efendant shall not while on release knowingly dissipate any material assets other than for attorneys fees and ordinary course business expenses." Id.

On November 12, 2024, Defendant entered a guilty plea before the undersigned to the following charges in Counts One and Thirteen in the Bill Of Indictment: conspiracy to commit offenses against the United States in violation of 18 U.S.C. §§ 1033, 1343 and 15 U.S.C. §§ 80b-6, 80b-17; and conspiracy to commit money laundering in violation of 18 U.S.C. § 1957. (Document No. 40).

The terms of Defendant's Plea Agreement in the case require the following of Defendant, among other things: to agree "to the appointment of a special master to identify, receive, apportion, and distribute funds for restitution"; to submit a joint motion for the appointment of the special master within thirty days after the filing of the Plea Agreement; to truthfully complete a financial statement within thirty days of the filing of the Plea Agreement; to take "all necessary and

3

Case 5:19-cr-00022-MOC-DCK   Document 492   Filed 11/22/24   Page 3 of 9

reasonable steps in [his] power to secure assets sufficient to pay full restitution…in the exclusive possession and control of one or more approved third parties," by "no later than 30 days after the issuance of the initial draft presentence report"; and to "make full disclosure of all current and projected assets to the United States Probation Office before sentencing." Id. at pp. 3–5.

Defendant consented to detention following his Plea and Rule 11 Hearing on November 12, 2024, in this case. Defendant thus currently awaits sentencing as well as the resolution of pending bond violation proceedings in both cases.

### III. The Pending RRC Motion and Bond Revocation Proceedings

On November 11, 2024, Defendant filed the "Motion Of Defendant Greg Lindberg To Be Held At A Residential Reentry Center In Tampa, Florida Pending Sentencing" (the "RRC Motion") in both cases. 5:19-CR-022-MOC (Document No. 486); 3:23-CR-048-MOC (Document No. 41). The matter came on for a hearing on November 12, 2024, along with Defendant's pending bond violations in both cases and his Plea and Rule 11 proceeding in case No. 3:23-CR-048-MOC. As stated above, Defendant consented to detention following the entry of his plea.

Also on November 12, 2024, the undersigned entered an Order continuing the matter and directing the Government to respond to the RRC Motion. 5:19-CR-022-MOC (Document No. 487); 3:23-CR-048-MOC (Document No. 45).

On November 19, 2024, Defendant filed a "Memorandum Of Law In Further Support Of Defendant Greg Lindberg's Motion To Be Held At A Residential Reentry Center In Tampa, Florida, Or, Alternatively, In The Western District Of North Carolina Or Elsewhere Pending Sentencing." 5:19-CR-022-MOC (Document No. 489); 3:23-CR-048-MOC (Document No. 47). Defendant contemporaneously filed the "Declaration of Robert T. Smith In Support Of Motion Of

4

Defendant Greg Lindberg To Be Held At A Residential Reentry Center…" (the "Smith Declaration"). 5:19-CR-022-MOC (Document No. 490); 3:23-CR-048-MOC (Document No. 48).

On November 19, 2024, the Government filed its "…Response To Defendant's Motion To Be Held At A Residential Reentry Center In Tampa, Florida, Pending Sentencing." 5:19-CR-022-MOC (Document No. 491); 3:23-CR-048-MOC (Document No. 49).

A continued hearing regarding the pending RRC Motion and bond revocation proceedings in both cases was held on November 21, 2024.

## DISCUSSION

First, the undersigned finds that the pending bond revocation proceedings are moot due to Defendant's consent to detention following his Plea and Rule 11 hearing. Counsel for Defendant conceded as much at the November 21, 2024 hearing. The Court will thus order termination of the bond revocation proceedings and proceed to consideration of the RRC Motion.

In the RRC Motion, Defendant requests an Order directing that "upon his self-surrender to the United States Marshals Service on November 12, 2024…he be held at a residential reentry center ("RRC" or "halfway house") in Tampa, Florida (near his current home), as opposed to a local jail, until he is designated for a facility by the Bureau of Prisons ("BOP") following sentencing." (Document No. 41, p. 1).[2] Defendant argues this measure is necessary to ensure his ability to comply with the terms of his Plea Agreement as described above. Id. at pp. 2–3.

Defendant argues the Court "may order halfway house placement as a condition of pretrial release under 18 U.S.C. § 3142(c)(1)(B)(xiii)." Id. at p. 2 (citing Administrative Office of the U.S. Courts, *Residential Reentry Centers – Reference Guide* 3 (Mar. 2020) (available at https://www.uscourts.gov/file/28164/download) (hereinafter "RRC Reference Guide")).

---

[2] The Court will refer here to the documents filed in Case No. 3:23-CR-048-MOC, noting that the relevant filings appear in both dockets.

5

Defendant further argues that the Court's authority to order halfway house placement "continues to apply where, as here, a defendant is awaiting sentencing." Id. (citing 18 U.S.C. § 3143(a)(1)). Defendant writes that "RRCs are 'an alternative to pretrial detention.'" Id. (citing RRC Reference Guide 2). Defendant alternatively asserts that RRCs constitute "custody," but argues that "even if being committed to the custody of a halfway house is viewed as a form of conditional release, the Court has the authority to order a defendant into the custody of an RRC pending sentencing under 18 U.S.C. §§ 3142(i) and 3143(a)(1)." (Document No. 47, pp. 3–4). Defendant thus urges the Court's "authority to direct the U.S. Marshals Service to commit Mr. Lindberg to the custody of an RRC pending sentencing," and asserts that there are "compelling reasons" to do so. Id.

In the Smith Declaration, Defendant's counsel Robert T. Smith asserts significant difficulties consulting with Defendant following his detention in the Gaston County Jail on November 12, 2024. (Document No. 48, pp. 2–3). Attorney Smith contends there is no opportunity for in-person visits with Defendant and that Defendant's "ability to communicate is severely restricted." Id. at p. 3. Attorney Smith asserts barriers to conducting phone and video calls and other forms of electronic communications with Defendant, in addition to concerns about receiving and storing legal mail; he asserts Defendant's counsel was only able to conduct one thirty-minute conference with Defendant during his first week of detention. Id.

At the hearing on November 21, 2024, Defendant acknowledged concerns over the Court's statutory authority to direct that the U.S. Marshals "detain" Defendant in an RRC. Defendant proposed an alternative option in the form of a "work release" order allowing counsel to provide transportation to a local law firm near an available detention facility. Ultimately, Defendant urges the Court to fashion some sort of custom detention order to better enable his communication with counsel for the purposes of complying with the Plea Agreement.

6

Case 5:19-cr-00022-MOC-DCK   Document 492   Filed 11/22/24   Page 6 of 9

In response, the Government argues that the Court should deny Defendant's "extraordinary request" and "instead consider issuing an order requesting that USMS place Defendant in a location that facilitates his ability to communicate with his counsel (whether in person or electronically) to the extent consistent with USMS's overall obligations and abilities." (Document No. 49, pp. 1–2). The Government asserts that RRC placement "is not detention; it is an alternative to detention and a condition of pretrial release." Id. at p. 2. The Government further asserts "it is likely that this Court does not have the authority to direct the USMS to place Defendant in any particular facility." Id. The Government posits a host of "legal and logistical issues" with Defendant's suggestion and argues "the Court should deny Defendant's specific request to be placed in the Tampa RRC because it is primarily based upon the Defendant's convenience and desire to be close to his family, and not on any issues worthy of the special treatment requested." Id. at p. 4.

The Government acknowledges that "Defendant's situation with respect to restitution is unique compared to most defendants given the complexity of his assets, the amount of restitution owed, and Defendant's claimed commitment to quickly taking the necessary steps to facilitate the payment of restitution." Id. at pp. 4–5. The Government asserts "there are differing views concerning the amount of involvement that Defendant needs to have to facilitate the payment of restitution, but Defendant will undoubtedly need to have some involvement." Id. at p. 5. As such, the Government "does not object to the USMS, to the extent it is able, placing Defendant in a location that facilitates his ability to communicate with his counsel (whether in person or electronically," and states it is their "understanding based upon conversations with the USMS that the USMS has a facility already within its customary network that can accommodate Defendant's need…for ready electronic access to his counsel." Id.

For the reasons that follow, the undersigned will deny the pending motion.

The parties ultimately appear to agree that placement at an RRC likely constitutes a condition of release or an alternative to detention. In essence, Defendant is asking for a renewed bond. Defendant pled guilty and consented to detention in one case. He was convicted by a jury twice in the other. He allegedly failed to appear for state court proceedings in Wake County, North Carolina. The alleged loss amount in the case is in excess of $550 million. (Document No. 40, p. 2). There are many alleged victims who have been adversely affected by Defendant's conduct. Defendant's alternative proposal at the hearing of a custom detention order of some kind does not resolve the legal, factual, practical, and policy issues that plague this motion. Taking into account the totality of the circumstances, the undersigned does not find the requested relief appropriate.

Additionally, the Court has serious concerns about the equity of the requested relief. For one, the Government is correct that there are "differing views concerning the amount of involvement that Defendant needs to have to facilitate the payment of restitution," (Document No. 49, p. 5); the parties' arguments on this point passed each other like ships in the night. Following extensive discussion at the hearings which included statements by counsel for victims, the necessity of Defendant's request remains extremely unclear. The undersigned is not persuaded that Defendant's request is ultimately "fair" to those with arguably greater need for such relief, but without the resources to obtain it.

Regarding the argument that the first week of Defendant's detention at the Gaston County Jail was problematic, the Court would make a number of observations. Respectfully, it is the job of the United States Marshals Service to make decisions about the management of federal detainees. But, this does not mean that the parties cannot advocate with the United States Marshals Service regarding issues arising in the case, such as the ones that form the basis for this motion.

The Court respectfully observes that counsel for the parties could have mitigated these problems by contacting the United States Marshals Service over the last week. In short, the Marshals are good at what they do—but they cannot address problems they do not know about. The Court emphasizes, especially in a case like this one, the importance of effective communication between the parties, and between the parties and the U.S. Marshals as appropriate.

This is a challenging situation, but for the foregoing reasons, the Court finds the requested relief inappropriate.

**IT IS, THEREFORE, ORDERED** that the "Motion Of Defendant Greg Lindberg To Be Held At A Residential Reentry Center In Tampa, Florida, Pending Sentencing," 5:19-CR-022-MOC (Document No. 486); 3:23-CR-048-MOC (Document No. 41), is **DENIED**.

The undersigned respectfully recommends that the parties consult directly with the United States Marshals Service about steps that can be appropriately taken to ensure the greatest access to Defendant in light of the parties' mutual obligations under the Plea Agreement.

The undersigned further respectfully recommends that the United States Marshals Service make decisions regarding Defendant's assigned housing that are consistent with his unusual needs for access to counsel, such that he is afforded reasonable opportunity for private consultation with counsel while detained.

**IT IS FURTHER ORDERED** that, inasmuch as Defendant consented to detention following his recent guilty plea, the pending bond revocation proceedings in Case Nos. 5:19-CR-022-MOC and 3:23-CR-048-MOC are **TERMINATED**.

**SO ORDERED**.

Signed: November 22, 2024

David C. Keesler
United States Magistrate Judge