**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>GREG E. LINDBERG,<br>Defendant. | Case No. 5:19-CR-22-MOC<br><br>Judge Max O. Cogburn, Jr. |

**DEFENDANT'S OBJECTIONS TO ENTRY OF ANY FINAL ORDER OF RESTITUTION AND FORFEITURE, AND RESERVATION OF CONSTITUTIONAL AND STATUTORY ISSUES**

Defendant Greg E. Lindberg respectfully submits these objections to the entry of any final order of restitution and forfeiture and reserves the constitutional and statutory issues set forth below. Because the Court may act imminently, Defendant files these objections now to preserve each issue on the record for the Court's de novo determination and for appellate review. Defendant does not waive, and expressly reserves, every issue previously raised, including those in his Response (3:23 Doc. No. 316), in every motion he has filed in these cases—whether pending, denied, withdrawn, or deemed moot—and in his objections to the Special Master's reports.

This filing is made in both the above-captioned cases. The restitution, forfeiture, and loss determinations at issue were entered in the Financial case, No. 3:23-CR-48-MOC; accordingly, and to avoid any ambiguity, each numbered docket citation herein is marked as being to the record in the Financial case (No. 3:23-CR-48-MOC) and is so designated at each entry.

The restitution and forfeiture the Government seeks rest on the valuations, loss findings, and recommendations of the Court-appointed Special Master and Receiver. For the reasons stated in Defendant's prior filings and summarized below,

that officer's appointment, his combined role, his unauthorized dispositions of Defendant's property, and the figures he produced cannot support the order the Government asks the Court to enter. Defendant objects and preserves the following.

Defendant states each objection below separately and specifically so that each is preserved. An objection made before the Court's ruling preserves the issue for review and need not be renewed after the ruling. *United States v. Lynn*, 592 F.3d 572 (4th Cir. 2010).

## I. The reference exceeded 18 U.S.C. § 3664(d)(6), and no rule of criminal procedure authorizes a master.

Section 3664(d)(6) permits reference to a special master only "for proposed findings of fact and recommendations as to disposition, subject to a de novo determination of the issue by the court." It does not authorize vesting custodial and dispositive power over the defendant's property in the same officer; the grant of a recommending function forecloses, by negative implication, a custodial and dispositive one. Enforcement of restitution runs through a different, procedurally protective channel—18 U.S.C. § 3664(m) and the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001 et seq.—which the appointment bypassed. Section 3664(c) confirms the limit: it makes "the provisions of this chapter, chapter 227, and Rule 32(c)" the "only rules applicable" to these proceedings, and no rule of criminal procedure authorizes a master. The appointment of a receiver to secure restitution is, moreover, an abuse of discretion where ordinary process and the FDCPA supply an adequate remedy. *United States v. Bradley*, 644 F.3d 1213 (11th Cir. 2011). Defendant did not consent to a receiver; he agreed only to a neutral special master.

*Cf. La Buy v. Howes Leather Co.*, 352 U.S. 249 (1957) (reference is the exception, not the rule).

## II. The combined Special Master, Receiver, and prosecutorial role violates due process.

An officer who investigates the estate, sells the property, values it, becomes a witness to his own transactions, and then adjudicates or recommends on the facts his own conduct created is not the neutral and detached decisionmaker the Fifth Amendment requires. *In re Murchison*, 349 U.S. 133 (1955); *Williams v. Pennsylvania*, 579 U.S. 1 (2016) (structural error). Where the officer is compensated from the estate he administers and values, the defect is established without any inquiry into actual bias. *Tumey v. Ohio*, 273 U.S. 510 (1927); *Ward v. Village of Monroeville*, 409 U.S. 57 (1972); *Connally v. Georgia*, 429 U.S. 245 (1977). A receiver has a financial interest in the very claims and values he is asked to determine, which disqualifies him from serving as a special master. *United States v. O'Connor*, 291 F.2d 520 (2d Cir. 1961) (citing *Tumey*). The test is whether the officer's interest "would offer a possible temptation to the average … judge." *Wards Corner Beauty Acad. v. Nat'l Accrediting Comm'n of Career Arts & Scis.*, 922 F.3d 568 (4th Cir. 2019). *See also Young v. United States ex rel. Vuitton et Fils*, 481 U.S. 787 (1987) (interested officer; no harmless-error review).

The defect is not limited to the officer's financial stake. The Special Master also assumed an accusatory, prosecutorial role adverse to Defendant while simultaneously serving as the officer whose findings the Court was asked to adopt. He investigated, generated, and advanced the loss and valuation figures that the

Government then adopted against Defendant—both at sentencing, where they drove the guideline enhancement, and for restitution; he conditioned a favorable assessment of Defendant's cooperation on a release running to his own benefit; and, four days before sentencing—while his demand for that self-benefiting waiver was still pending—he filed a Statement Concerning Defendant's Cooperation (3:23 Doc. No. 159) advancing a position adverse to Defendant on a contested sentencing matter. His accusatory posture was thus driven by his own personal interest in the release he sought: the adverse cooperation assessment served as leverage for, and was the product of, that demand. One who performs an accusatory or prosecutorial function may not also sit in judgment or recommend the judgment on the same matter. *In re Murchison*, 349 U.S. 133 (1955); *Williams v. Pennsylvania*, 579 U.S. 1 (2016). And due process forbids injecting the decisionmaker's own personal interest into the prosecutorial or enforcement function in precisely this way; those who exercise such functions must themselves be disinterested and neutral. *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980); *Young v. United States ex rel. Vuitton et Fils*, 481 U.S. 787 (1987). By fusing the roles of investigator, adverse advocate, and asset-liquidator with the role of the officer recommending the Court's findings, the Special Master functioned as a second prosecutor, and that combination independently violated due process.

## III. De novo review by the Article III judge does not cure the defect.

The right is to a neutral officer at the moment the proceeding occurs, not to eventual review by a neutral officer. *Ward*, 409 U.S. at 61–62 (defendant "is entitled to a neutral and detached judge in the first instance"); *Williams*, 579 U.S. at 15–16.

Adoption of a disqualified officer's findings is not the independent fact-finding the law requires. It follows that none of the tainted officer's work product survives: his reports, valuations, and recommendations are the product of the disqualification, and they may not be adopted, relied upon, or placed on the record in any form. The Court must determine restitution and forfeiture, if at all, on its own findings drawn from tested evidence, and not from the tainted officer's reports.

**IV. The Special Master's loss and valuation findings drove the Guidelines calculation and the custodial sentence, and that fact-finding could not be delegated.**

The Special Master's loss and valuation figures supplied or materially determined the loss amount under U.S.S.G. § 2B1.1(b)(1), and therefore the offense level, the guideline range, and the consecutive custodial term imposed. Sentencing is committed to the court. 18 U.S.C. § 3553(a); Fed. R. Crim. P. 32(i)(3)(B) (the court "must … rule on" any disputed portion of the presentence report or other controverted matter); U.S.S.G. § 6A1.3. No statute or rule authorizes reference of guideline fact-finding to a master. The calculation was doubly infirm. First, the enhancement was sought and imposed on a gross loss figure of approximately $1.655 billion (3:23 Doc. No. 162)—the Special Master's own estimate, which he characterizes as a "prediction," a "best guess," and "inherently unreliable" (3:23 Doc. No. 323 at 3–4)—without any offset for the value returned to or recovered for the victims, as U.S.S.G. § 2B1.1 cmt. n.3(E) requires. Loss under the Guidelines "shall be reduced" by the money and the fair market value of the property returned and recovered; here no such credit was applied to the guideline computation, so the offense level was driven by a

gross number rather than by the net loss the Guidelines measure. Second, that same gross figure is itself the product of the Special Master's own dispositions—he sold, and continues to sell and to propose to sell, the Primary Restitution Assets below value, including the completed Becket sale and the proposed disposition of Damovo for the amount of the debt against it, notwithstanding a pending offer of $400 to $500 million for Damovo—dispositions that suppress the value credited against loss even as the resulting shortfall is counted as loss. The defendant would thus be charged twice for the same conduct: the officer's below-value liquidations depress the credit, and the depressed recovery inflates the loss that stacked the custodial term. A sentence enhanced on an unreduced, self-generated valuation of that character cannot stand. Moreover, the figure on which both the guideline enhancement and the restitution award rest is one the Government adopted as its own without itself knowing or disclosing the methodology or data behind it. The Government took the Special Master's loss and valuation numbers and placed them before the Court at sentencing, where they drove the guideline enhancement, and again as the basis for restitution—yet it has never produced, and does not appear itself to possess, the analysis underlying them. A proponent that cannot explain the basis for its own numbers has not carried its burden of proof, 18 U.S.C. § 3664(e); and figures the Government adopted but cannot support cannot sustain either the guideline enhancement or the restitution award. The doubt about the very basis of the $1.6 billion calculation used at sentencing comes from the Special Master's own filings made after the sentence was imposed: it is in those later submissions that he

characterizes his valuations as a "best guess" and a "prediction" and describes them as "inherently unreliable," while disclaiming reliance on any independently commissioned business valuations. 3:23 Doc. No. 323 at 3–4; see 3:23 Doc. No. 246, Appendix 1. The number the Court used to enhance the sentence therefore rests on the same methodology the Special Master has since disavowed, and his post-sentencing disclaimers cast doubt backward on the figure he supplied for sentencing. Compounding the defect, the Special Master did not confine himself to his reports: four days before the May 26, 2026 sentencing he filed a Statement Concerning Defendant's Cooperation (3:23 Doc. No. 159, filed May 22, 2026), a sentencing-eve submission that operated to drive the guideline loss determination informally—outside any adversarial testing, cross-examination, or Rule 32 fact-finding by the Court. An unsworn, last-minute filing by the very officer whose valuations set the loss is not a permissible substitute for the Court's own findings, and Defendant objects to any reliance on it in the guideline computation. Defendant objects that the Court has not made its own findings on loss—net of all value returned and recovered—and demands that it do so under Rule 32(i)(3)(B). To the extent the loss found by the Special Master increased a statutory maximum or mandatory minimum, those facts were required to be found by a jury. *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alleyne v. United States*, 570 U.S. 99 (2013). Defendant timely objected to this delegation within fourteen days of the sentencing and of the Judgment (3:23 Doc. No. 162, entered May 29, 2026)—see Defendant's Emergency Motion to Stay (3:23 Doc. No. 172, filed June 9, 2026, with supporting Memorandum, 3:23 Doc. No. 173) and

Defendant's Emergency Motion to Stay and Consolidated Objections to the Preliminary Order of Restitution (3:23 Doc. No. 190, filed June 11, 2026), each of which expressly asserted every ground stated therein as an objection to the Preliminary Order of Restitution (3:23 Doc. No. 161)—and renews and incorporates that objection here. The specific grounds set forth above were likewise placed before the Court in those filings and are incorporated as objections to the guideline loss determination: Defendant's Emergency Motion to Stay and supporting Memorandum (3:23 Doc. Nos. 172, 173) demand that cash and property already returned be credited dollar-for-dollar and identify the mandatory offsets and reductions the proposed figure omits; and Defendant's Emergency Motion to Stay and Consolidated Objections (3:23 Doc. No. 190) objects to the Special Master's May 22 Statement (3:23 Doc. No. 159) as having compromised the May 26 sentencing. Defendant renews and incorporates each of those grounds here and objects to and preserves each of them. The objection to the loss-driven guideline enhancement and to the stacking of the custodial terms was raised at sentencing: Defendant's Sentencing Memorandum (3:23 Doc. No. 145) argued that "the Sentencing Guidelines substantially overstate the impact of the loss amount," and it invoked this Court's own statement that "[i]t's not one where the Court is going to go and try to be stacking stuff." The loss used for the guideline calculation must be reduced by all applicable credits: under U.S.S.G. § 2B1.1 cmt. n.3(E), loss "shall be reduced" by the money returned and the fair market value of the property returned to and recovered for the victims, so that the offense level is set by the net loss and not by a gross figure. Defendant's counsel, James

Wyatt, argued this point on the record at the May 26, 2026 sentencing hearing, in support of a lower sentence. He argued that "the guideline figure for loss overstates the loss," and that this Court has recognized that overstatement factor in prior cases, including *United States v. Kipp*. Sentencing Tr. 19 (May 26, 2026) (3:23 Doc. No. 164). He further argued that, on the Special Master's own calculations, restitution payments already "made or credited … exceed a billion dollars," including a preferred-equity credit of two to three hundred million dollars that "the Special Master has indicated should be credited" but that, as a matter of timing, "hasn't been credited yet." Id. at 13. That argument, made before the Court's ruling, expressly preserved the credit-reduction issue. *See United States v. Lynn*, 592 F.3d 572 (4th Cir. 2010). That objection was preserved for appellate review by Defendant's Notice of Appeal from the Judgment and the Order of Restitution (3:23 Doc. No. 192), and Defendant renews and expressly reserves it here so that it is not treated as waived in any further restitution or forfeiture proceeding before this Court.

## V. The unauthorized dispositions of Defendant's property are ultra vires and void.

The Special Master/Receiver sold Defendant's property without the appraisal, publication, and judicial confirmation required by the appointing Order (3:23 Doc. No. 56) and 28 U.S.C. §§ 2001–2004. A receiver has "no powers except such as are conferred upon him by the order of his appointment." *Booth v. Clark*, 58 U.S. (17 How.) 322 (1855). An act beyond the order is a nullity: the Fourth Circuit has held an unauthorized receiver sale void and the confirming decree of no legal force, *Cumberland Lumber Co. v. Tunis Lumber Co.*, 171 F. 352 (4th Cir. 1909); *accord*

*Acadia Land Co. v. Horuff*, 110 F.2d 354 (5th Cir. 1940) (private sale not complying with the statute is void). These requirements reach the sale of the companies themselves. Sections 2001 and 2002 govern the sale of any realty the companies hold; and 28 U.S.C. § 2004 provides that any personalty—including the equity interests in, and the business assets of, a going concern—"sold under any order or decree of any court of the United States shall be sold in accordance with section 2001 … unless the court orders otherwise." The only exclusions from this regime are sales under Title 11 and sales by receivers or conservators of banks appointed by the Comptroller of the Currency, 28 U.S.C. §§ 2001(c), 2004; neither describes this proceeding, which is a criminal restitution matter, not a bankruptcy, administered by a special master appointed under 18 U.S.C. § 3664(d)(6), not a bank receiver. Federal courts have applied § 2004 to a receiver's sale of the controlling stock of a company, holding that it incorporates § 2001's protections and that the statute expresses a "preferential course" from which a court "should not order otherwise except under extraordinary circumstances." *Tanzer v. Huffines*, 412 F.2d 221 (3d Cir. 1969). That these protections are most often applied in civil receiverships is immaterial: §§ 2001–2004 govern any sale made "under any order or decree of any court of the United States," and they apply with equal force to a disposition made in this criminal proceeding—where, moreover, the officer was a special master appointed under 18 U.S.C. § 3664(d)(6) to propose findings, not a civil equity receiver clothed with liquidation authority. The default appraisal, publication, and confirmation requirements therefore applied to the disposition of these companies, and § 2004's "unless the court

orders otherwise" escape was never invoked by any order authorizing a different method—indeed, the Becket sale was made with no order at all. Operating companies of this kind were required to be appraised and sold with confirmation and the statute's upset-bid protection, not dumped at the value of the debt against them. Defendant previously objected to the Special Master's disposition of Primary Restitution Assets—including the completed Becket sale and the proposed disposition of Damovo for debt (which remains on the block, notwithstanding a pending offer of $400 to $500 million)—without the Court's approval, including in his Emergency Motions to Stay and Consolidated Objections (3:23 Doc. Nos. 172 and 190), and renews and incorporates those objections here. The Becket sale in particular was conducted with no motion, no notice, and no order of this Court, in violation of the appointing Order (3:23 Doc. No. 56) and § 3664(d)(6), as set forth in 3:23 Doc. No. 190. Defendant objects to any reliance on the prices obtained in those unconfirmed sales, and reserves his claims for an accounting, disgorgement, a constructive trust over traceable proceeds, and surcharge.

## VI. To the extent restitution was deferred, the Special Master/Receiver executed a sanction before it was imposed.

Where restitution was deferred under 18 U.S.C. § 3664(d)(5), there was no liquidated obligation, lien, or writ until the amended judgment issued. Section 3664(m) authorizes enforcement of an order of restitution; there was none to enforce. Seizing and liquidating Defendant's property during that window bypassed every protection the Federal Debt Collection Procedures Act attaches to prejudgment remedies, 28 U.S.C. §§ 3101–3105. Defendant preserves this objection.

## VII. The Government has not carried its burden under 18 U.S.C. § 3664(e).

The loss and valuation on which the proposed order rests are unsubstantiated and derive from an officer who has disclaimed them as a "best guess" and "inherently unreliable." The Government's adoption of those figures does not satisfy its non-delegable burden. 18 U.S.C. § 3664(e); *United States v. Steele*, 897 F.3d 606 (4th Cir. 2018); *United States v. Dove*, 585 F. Supp. 2d 865 (W.D. Va. 2008) (Government failed its burden where it adopted unsubstantiated third-party loss figures); *United States v. Church*, 701 F. Supp. 2d 814 (W.D. Va. 2010). The failure is more fundamental than adoption of a disclaimed figure: the Government has neither produced nor shown that it possesses the methodology and underlying data for the Special Master's numbers. It has placed those numbers before the Court—at sentencing and for restitution—without demonstrating that it can supply the basis for them, and on the present record it appears not to hold that basis itself. A party that cannot produce the methodology and data supporting the loss it proposes has not proved that loss by a preponderance of the evidence, and it may not rely on the Special Master's possession of the material to excuse its own non-production. 18 U.S.C. § 3664(e). The approximately $1.6 billion loss figure, and the forfeiture measured by the Special Master's "Mid" estimate, are therefore unreliable and unsupported on the present record. Nor does Defendant's agreement to use the "Mid" estimate in the forfeiture formula cure the defect or foreclose examination of the underlying data: that agreement was made against, and premised on, the valuation of the AAPC assets as it then stood, and it does not survive a material change to that valuation. An

agreement to accept an estimate built on a superseded valuation cannot bind Defendant to a figure recalculated on materially different assumptions, and it does not immunize the inputs of the forfeiture computation from testing before the judgment enters. Defendant's pending motions to compel seek precisely that methodology and data; until it is produced and tested, the Government cannot carry its burden, and Defendant objects to entry of any order on this record. Defendant's demand for that production—in his motions to compel and herein—is not a concession that the Special Master's tainted report may be cured, adopted, or placed on the record; for the reasons stated above, it may not. The demand is made to prevent a premature forfeiture and restitution order from entering on an unsupported record—the forfeiture money judgment being measured by the very "Mid" estimate the Special Master disclaims—and to ensure that any determination the Court makes rests on tested evidence found by the Court, not on the disqualified officer's work product.

## VIII. Sixth Amendment — the receivership deprived Defendant of his counsel of choice for the restitution, forfeiture, and sentencing proceedings.

Through sentencing, Defendant was represented by his counsel of choice. The Special Master/Receiver's restraint and liquidation of Defendant's assets—including untainted assets not traceable to any offense—has since deprived Defendant of the ability to retain his counsel of choice for the restitution and forfeiture proceeding, requiring him to proceed with substitute counsel. Deprivation of counsel of choice is structural error requiring no showing of prejudice, *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), and the restraint of untainted assets needed to retain counsel

violates the Sixth Amendment, *Luis v. United States*, 578 U.S. 5 (2016). That the deprivation arises after conviction does not defeat the claim: Defendant does not seek to use substitute *forfeited* assets, *cf. United States* v. *Marshall*, 872 F.3d 213 (4th Cir. 2017), but *untainted* assets not traceable to any offense—including funds the Wake County court ruled were not constrained—that he needs to retain counsel of choice for the restitution and forfeiture proceeding. The deprivation was not abstract: because Defendant was required to proceed after sentencing with substitute counsel newly retained for the restitution and forfeiture stage, the change in representation itself restricted what could be investigated, briefed, and placed on the record within the fourteen-day period following sentencing and the entry of the Judgment (3:23 Doc. No. 162) in which objections were due, and thereby constrained Defendant's ability to preserve and present objections during that critical window. That practical restriction on Defendant's access to the docket is a further consequence of the Sixth Amendment violation and an independent reason the issues reserved herein must be preserved now. The deprivation of resources is concrete and predates sentencing. The receivership deprived Defendant of the funds he would otherwise have used to retain and pay counsel of his choosing—including loans from AAPC and other instruments, as reflected in Defendant's Declaration. Def. Ex. 1, Tab B. Those sources were placed beyond his reach, and were unavailable even before sentencing, so the deprivation began before the sentencing stage and not merely after it. As a consequence, Defendant's legal counsel has had to be paid instead from the proceeds of the very assets the Special Master has sold—placing the officer whose figures and conduct

Defendant contests in control of the funds from which Defendant's defense must be paid. What followed confirms the entanglement of the officer's control over Defendant's funds with the defense's ability to be heard: when Defendant, through prior counsel (Katten Muchin Rosenman LLP), pressed his objections to the Special Master's restitution report on the record, the Special Master responded with an adverse Statement Concerning Defendant's Cooperation (3:23 Doc. No. 159), filed four days before sentencing. The exercise of the right to object through counsel thus drew an adverse assessment from the very officer who controlled Defendant's assets. The deprivation is not confined to the restitution and forfeiture stages; it reaches the sentencing itself. Because restitution is part of the criminal sentence and sentencing is not complete until the final order of restitution is entered, *Dolan v. United States*, 560 U.S. 605 (2010); 18 U.S.C. § 3664(d)(5), the sentencing proceeding remains open, and Defendant may still, following the restitution hearing, place objections to and seek corrections of the sentence—including the loss-driven guideline calculation and the restitution and forfeiture components. Defendant is entitled to the assistance of his counsel of choice for that continuing sentencing process, and the receivership's liquidation of the untainted assets he needs to retain that counsel deprives him of it. Deprived of the funds the receivership controls—including the AAPC loans and the other untainted resources he would otherwise use to retain and pay counsel of his choosing—Defendant is now reduced to relying on counsel willing to represent him on a generosity basis, rather than the counsel of choice he could retain and pay but

for the receivership's restraint of his resources. This objection is directed to the restitution, forfeiture, and sentencing proceedings, and Defendant preserves it.

## IX. Restitution is criminal punishment, which triggers the full constitutional architecture.

Restitution under the Mandatory Victims Restitution Act is criminal punishment. *Ellingburg v. United States*, 607 U.S. 163, 146 S. Ct. 564 (2026). Defendant accordingly preserves: (a) the Sixth Amendment jury guarantee—Defendant contends that the facts necessary to support restitution and forfeiture, including the identification of any victim and the amount of loss, must be found by a jury beyond a reasonable doubt, not by the Court by a preponderance of the evidence and not by a master; Defendant acknowledges that *United States v. Day*, 700 F.3d 713 (4th Cir. 2012), holds *Apprendi* inapplicable to restitution, and preserves this issue for further review in light of *Ellingburg*, *see Apprendi*, 530 U.S. 466; *Southern Union Co. v. United States*, 567 U.S. 343 (2012); (b) the Excessive Fines Clause and its proportionality limit, *United States v. Bajakajian*, 524 U.S. 321 (1998); *Timbs v. Indiana*, 586 U.S. 146 (2019); (c) the Ex Post Facto Clause; and (d) the Double Jeopardy Clause—Defendant is entitled to full credit, at fair market value, for value already exacted, and objects to any increase in the amount, *North Carolina v. Pearce*, 395 U.S. 711 (1969); *Ex parte Lange*, 85 U.S. (18 Wall.) 163 (1873). Defendant applies the § 3664(e) preponderance standard for purposes of these objections without conceding its constitutionality.

## X. Appointments Clause.

The Special Master exercised significant authority pursuant to the laws of the United States and, if an officer, was not appointed in conformity with Article II. *Freytag v. Commissioner*, 501 U.S. 868 (1991); *Lucia v. SEC*, 585 U.S. 237 (2018). The Appointments Clause turns on whether an officer exercises significant federal authority, not on whether the proceeding is civil or criminal, and it governs here regardless of that distinction. Having timely objected, Defendant is entitled to relief. *Ryder v. United States*, 515 U.S. 177 (1995).

## XI. Reservation; no waiver; second appeal.

Defendant reserves all issues previously raised, including those in his Response (3:23 Doc. No. 316), in every motion he has filed in these cases—whether pending, denied, withdrawn, or deemed moot—including his motions to compel and his Emergency Motions to Stay and Consolidated Objections (3:23 Doc. Nos. 172 and 190, filed June 9 and June 11, 2026—within fourteen days of the Judgment (3:23 Doc. No. 162)—each asserting every ground therein as an objection to the Preliminary Order of Restitution (3:23 Doc. No. 161)), his objection to the delegation of the loss determination made within fourteen days of the sentencing, and his objections to the Special Master's reports and recommendations, and does not waive any issue by the Court's entry of an order over his objection. The denial of any such motion, or its disposition as moot or withdrawn, does not waive the issues it raised, which Defendant expressly preserves. Defendant preserves his right to appeal from any amended judgment imposing restitution, which is a separate, independently

appealable judgment. *Manrique v. United States*, 581 U.S. 116 (2017). To the extent any appeal waiver is asserted, these objections fall outside it. *See United States v. Broughton-Jones*, 71 F.3d 1143 (4th Cir. 1995) (restitution not authorized by statute is outside an appeal waiver); *United States v. Attar*, 38 F.3d 727 (4th Cir. 1994) (a proceeding conducted in violation of the right to counsel is outside an appeal waiver).

## CONCLUSION

For the foregoing reasons, Defendant objects to the entry of any final order of restitution and forfeiture on the present record, and respectfully requests that the Court decline to enter such an order until these issues are resolved. In all events, Defendant preserves each objection and reservation above for the Court's de novo determination and for appellate review.

Dated: August 26, 2026

Respectfully submitted,

/s/ Kenneth N. Barnes
Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
Email: barnesatty@aol.com

/s/ Vivek Ramachandran
Vivek Ramachandran
Dhamma Law PLLC
418 Broadway, Suite N
Albany, NY 12207
Email: vramachandran@dhammalaw.com
Admitted pro hac vice

*Counsel for Greg E. Lindberg*

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a notice of electronic filing upon all counsel of record and all parties registered to receive such notices in this case.

Dated: August 26, 2026

*/s/ Kenneth Barnes*
Kenneth Barnes
*Counsel for Greg E. Lindberg*