IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC<br>Case No. 5:19-CR-22-MOC<br><br>Judge Max O. Cogburn, Jr. |

# DECLARATION OF GREG E. LINDBERG (28 U.S.C. § 1746) REGARDING COUNSEL'S REPORTS OF THE JULY 2026 MEETINGS WITH THE GOVERNMENT AND THE SPECIAL MASTER

Greg E. Lindberg declares as follows:

1. I am the Defendant in the above-captioned matter. I am over the age of eighteen and competent to testify. I make this declaration in support of my Motion for Reconsideration of the Order of August 31, 2026 (Doc. 330). The matters stated below are within my personal knowledge: they are what my then-counsel reported to me, in writing, at the time. I state the substance of those reports in my own words and do not attach or quote them.

2. From approximately late June 2026 until August 10, 2026, I was represented by Litson PLLC of Nashville, Tennessee, including attorneys Edward ("Ted") Canter, Alex Little, and Brent Hannafan. I was incarcerated throughout that period, with limited and unreliable access to telephone and e-mail, and I relied

on my attorneys' written summaries of their meetings to know what was happening in my case.

3. On July 5, 2026, I asked my counsel to prepare a detailed written summary of every meeting with the Government and the Special Master, to circulate it to the participants so that any inaccuracy could be corrected, and to send it to me. I also asked counsel to request a detailed accounting of all cash paid out of the insurance companies in connection with the Beckett and Clanwilliam transactions, of all Primary Restitution Assets, and of all disbursements to policyholders, with monthly updates going forward.

**A. What counsel reported about the July 2, 2026 call with the Government**

4. Later on July 5, 2026, my counsel reported to me in writing on an introductory call they had held with counsel for the United States—Assistant United States Attorneys Daniel Ryan and Benjamin Bain-Creed and Trial Attorney Lyndie Freeman. As reported to me, Government counsel walked through what they described as the Special Master's remaining work on the final report, interest, offsets, and two parties seeking victim status; Government counsel did not appear to have contemplated any dissolution of the Special Master's role and pointed to the order establishing it; and Government counsel noted that several motions were open, including the motions to disqualify Government counsel and to disqualify the Special Master. Nothing reported to me indicated that the Government intended to respond to those motions on the merits.

5. On the subject of counsel's fees, it was reported to me that Government counsel had no objection to my lawyers submitting invoices for reimbursement, but

might have concerns about payment for time spent getting up to speed, and that the Special Master had previously set aside funds for professional fees which might already have been exhausted.

### B. What counsel reported about the July 16, 2026 weekly meeting with the Special Master and the Government

6. On July 16, 2026, my counsel called in to the weekly meeting among the Special Master, his advisors, and the Government, and then spoke separately with the Special Master, Joseph W. Grier, III, and his counsel, Michael L. Martinez. Counsel's written notes of both conversations were prepared that afternoon and forwarded to me the same day. As reported to me, Mr. Ryan, Ms. Freeman, and Mr. Bain-Creed attended for the Government; Scott Avila, David Elkin, and Don Harer attended for Paladin; and Mr. Grier and Mr. Martinez attended for the Special Master.

7. As to the Government, it was reported to me that the Government's only stated concern was timing; that Government counsel were plainly trying to move the restitution determination forward as quickly as possible; that Mr. Bain-Creed and Ms. Freeman were particularly aggressive; and that Mr. Bain-Creed took the position that my filings would take money away from victims because the Special Master would have to respond to them. At no point was it reported to me that the Government intended to respond to my motions on the merits, or to address causation, offsets, or credits.

8. As to the Special Master, it was reported to me that Mr. Grier and Mr. Martinez said they disagreed with my objections for what they called conceptual

reasons; that they estimated the area of potential agreement at roughly $50 million in offsets; that they had not filed a response to the Vista/Cell 1.16 motion because they were relying on information I had provided and had nothing to add; that, as to the zero-coupon bonds, a planned meeting with my prior counsel had never taken place, that it was too late to change the report, but that they would not push back hard at the final hearing and were in substance inviting me to prove the point there; and that the value of AAPC, described as the largest asset, had been revised downward and would be provided to the Court under seal.

9. As to professional fees, it was reported to me that the Special Master had no objection to my lawyers submitting fees, but that he said there was no money for professional fees at that time unless and until another asset was sold.

**C. The Special Master's own compensation**

10. Fourteen days after telling my counsel that there was no money for professional fees, the Special Master moved to approve his own compensation and that of his advisors for the period May 1 through June 30, 2026 (Doc. 263, filed July 30, 2026), and the Court granted that motion on August 26, 2026 (Doc. 327). The Special Master has since opposed the fee motion of my prior counsel (Doc. 338). Litson PLLC was never paid from the restitution assets for its work on my behalf. I understood from these events that the Special Master was continuing to pay himself and his advisors from the assets he administers while telling the lawyers then defending me that there was no money to pay them. The lawyers who went unpaid were my prior counsel. My current counsel, Kenneth N. Barnes, does not charge the

Special Master or the restitution assets for his work on my behalf and has submitted no fee request to the Special Master.

11. I did not attend the July 2 or July 16, 2026 meetings, and I do not purport to testify to what was said there other than as my counsel reported it to me in writing at the time. I am not attaching my counsel's written reports or any other communication between me and my attorneys. I do not waive, and expressly preserve, the attorney-client privilege and work-product protection over all communications with my current and former counsel; this declaration is limited to what I was told the Government and the Special Master said about their own positions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 14, 2026.

/s/ ______________________

Greg E. Lindberg
BOP Inmate # 34-828-058